**Evelyn BODETT, wife; David Bodett,
husband, Plaintiffs–Appellants,**

v.

**COXCOM, INC., a Delaware
corporation, Defendant–
Appellee.**

**No. 03–15112.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 2004.

Filed April 26, 2004.

Steven D. Keist (argued and briefed), Steven D. Keist, P.C., Glendale, AZ, and John J. Jakubczyk (briefed), Phoenix, AZ, for the plaintiffs-appellants.

Richard K. Mahrle (argued and briefed), Gammage & Burnham, Phoenix, AZ, for the defendant-appellee.

Before FERNANDEZ, HAWKINS, and THOMAS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

▬ Evelyn Bodett and her husband, David Bodett, appeal an adverse grant of summary judgment on her claims of: (1) religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17, the Arizona Civil Rights Act ("ACRA"), Ariz.Rev. Stat. §§ 41–1461 to –1467, and the Arizona Employment Protection Act ("AEPA"),[1]

---

**1.** Bodett only makes arguments regarding her religious discrimination claim on appeal. She has therefore waived her claims of discrimination based on age, sex or race. *See*

Ariz.Rev.Stat. §§ 23–1501 to –1502; (2) violations of the First Amendment of the United States Constitution and Article 2 of the Arizona Constitution; and (3) wrongful discharge and intentional infliction of emotional distress under Arizona state law.[2]

The district court found that Bodett was unable to rebut the evidence her employer, CoxCom, Inc. ("Cox"), submitted demonstrating a legitimate nondiscriminatory reason for firing Bodett—that she violated the company's harassment policy by coercing and harassing an openly gay subordinate. Because Bodett has failed to raise an inference of disparate treatment and did not argue a concomitant "failure to accommodate" theory of discrimination, we affirm.

## FACTS[3] and PROCEDURAL HISTORY

█ Evelyn Bodett, a white female approximately 52 years of age, is an evangelical Christian and, at the time of these events, an 18–year employee of Cox and its predecessor, American Cable. Prior to her termination on November 30, 2000, Bodett was a Quality Assurance Manager who supervised thirteen employees, including Kelley Carson. Carson is openly gay and Bodett was aware of this when Carson came under her direct supervision. When they began working together, Bodett told Carson that homosexuality was against her Christian beliefs. Carson stated at her deposition that she did not feel threatened or harassed by this comment at the time. During her seventeen years of employ-

*United States v. Ullah,* 976 F.2d 509, 514 (9th Cir.1992). In addition to relying on Title VII, Bodett initially claimed discrimination based on age, sex, race and religion under "Arizona Revised Statutes, Title 23," an apparent reference to the Arizona Employment Protection Act, Ariz.Rev.Stat. § 23–1501 to –1502, the provision on which she also based her retaliation claim. Although there is no express claim under the Arizona Civil Rights Act, the Defendant responded to Bodett's discrimination claim under Title VII, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, and the Arizona Civil Rights Act. The district court treated the discrimination claims under Title VII and the Arizona Civil Rights Act, which have the same framework of analysis. We give Bodett's claims the same treatment on appeal.

**2.** Bodett waived any federal retaliation claim under Title VII by failing to file such a claim with the Equal Employment Opportunity Commission ("EEOC") prior to bringing her civil suit. 42 U.S.C. § 2000e–5(e)(1) (2000); *Edelman v. Lynchburg College,* 535 U.S. 106, 108–09, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002). Bodett has also waived her state law claims of retaliation under the ACRA by failing to file a prior administrative complaint with the Arizona Civil Rights Division. *See* Ariz.Rev.Stat. § 41–1481; *see also Ornelas v. Scoa Indus., Inc.,* 120 Ariz. 547, 587 P.2d 266,

266–67 (1978). Bodett's ambiguous references to a breach of contract claim on appeal must be taken as part of her wrongful discharge claim under Ariz.Rev.Stat. § 23–1501(3)(a), as no distinct contract claim was made in the initial complaint. *Smith v. Marsh,* 194 F.3d 1045, 1052 (9th Cir.1999) ("As a general rule, we will not consider arguments that are raised for the first time on appeal.").

**3.** The parties disagree over whether the district court adopted the proper facts in making its summary judgment determination. Bodett claims that the district court adopted Cox's statement of the facts almost verbatim, even where facts were specifically disputed by Bodett. However, the basis for Bodett's dispute of these facts rests on assertions that the underlying depositions by certain parties were either "incomplete or distorted." A party cannot create a dispute of fact by simply questioning the credibility of a witness. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (credibility determinations are for the factfinder on the merits in discrimination cases). Nevertheless, the facts presented in this section are taken from the overlap between the two parties' statements of fact in support of/against summary judgment; wherever a discrepancy exists, Appellant's version is credited.

ment with Cox prior to the incidents described herein, Bodett had never received any complaints nor been reprimanded for any allegation of harassment.

In June of 2000, Carson reported to Bodett for one of several regularly scheduled "coaching" sessions. According to Bodett, Carson was in a "state of emotional distress," because she had recently broken up with her partner and was concerned she could no longer afford to make house payments. Carson asked for Bodett's advice, at which point, Bodett told Carson that "the relationship she was in, was probably the cause of the turmoil in her life," that "God's design for a relationship was between a man and a woman," and "that homosexuality is wrong, [and] considered by God to be a sin ...."[4] On Carson's suggestion, Bodett shut the door and the two prayed together.[5] Carson referred to this event as when Bodett "made [her] born again." Shortly thereafter, Carson attended church with Bodett at least once. Bodett also informed Carson about a "Women of Faith Conference," and offered to purchase a ticket for Carson despite the fact that Carson said she could not afford to go and that she already had plans for that night. Carson ended up attending the event after Bodett purchased the ticket for her.

In November of 2000, Carson received a job offer from Cox's Omaha office. The job was a promotion, and Carson discussed the offer with Bodett both before and after deciding to take it.[6] Bodett and Carson were both supervised by Mireille DeBryucker, Vice President of Customer Care. Prior to discovering that Carson intended to leave the Phoenix office, DeBryucker was informed that Carson had complained to another employee about Bodett's comments regarding her sexuality. When she found out that Carson was leaving the Phoenix office, DeBryucker asked her to lunch to find out why she was leaving.

Carson told DeBryucker that she was leaving because she was uncomfortable with the way Bodett had treated her sexuality. Carson gave as an example a recent conversation in which Bodett had mentioned to Carson at the end of performance review that she would be disappointed if Carson were dating another woman, but happy if she were dating a man. When DeBryucker asked Carson why she had not informed Bodett that her behavior made her uncomfortable or filed a complaint with human resources, Carson explained that she had not done so because "Bodett was her boss and she could not afford to lose her job."

At the time of these events, Cox had a General Harassment Policy and a "Corrective Action Policy" (together "the Policy") in place stating, *inter alios*, that:

> "No employee shall harass another employee on the basis of race, color, religion, sexual orientation, national origin, age, disability or veteran status;"

> "An employee who harasses another employee may be subject to corrective action, up to and including termination;" and

---

4. According to Bodett's deposition, she told Carson that homosexuality was a sin on at least three occasions.

5. Bodett argues that who shut the door is a question of material fact over which a dispute exists, despite her admission under oath that she herself shut the door.

6. In fairness, Carson admitted in her deposition that Bodett actively aided her in her pursuit of the job, helping her with interview skills and giving her an excellent review. Carson also sought out the Omaha job because it was a promotion and "a good opportunity."

"Verbally or physically harassing, coercing, intimidating or threatening a coworker, supervisor or customer" is conduct "which may be cause for immediate discharge."

After her conversation with Carson, DeBryucker asked Carson to meet with Sue Hutchinson, Cox's Phoenix Human Resources Manager. Hutchinson, the author of the Policy, viewed Bodett's behavior as a violation and discussed the matter with her supervisor, Karen Ramsey, as well as with DeBryucker, the in-house attorney, and the corporate director of human resources. DeBryucker, Hutchinson and Ramsey agreed if Bodett admitted to making the statements that Carson alleged, termination would be appropriate.

On November 30, 2000, DeBryucker and Hutchinson met with Bodett, who admitted the occurrence of the events and conversations described by Carson. At the conclusion of the meeting, Hutchinson terminated Bodett, informing her that her actions were "a gross violation of Cox's policy." Upon termination, Bodett filed a complaint with the EEOC and received a right to sue on her discrimination claim. The district court granted summary judgment for Cox on all of Bodett's federal and state claims and this appeal ensues.

### JURISDICTION AND STANDARD OF REVIEW

Summary judgment, a final order over which we take jurisdiction pursuant to 28 U.S.C. § 1291, is reviewed *de novo*, drawing "all reasonable inferences supported by the evidence in favor of the non-moving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002). In order to uphold the district court, we must find that no genuine disputes of material fact exist and that the district court correctly applied the law. *Id.* A genuine dispute of material fact exists where "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the context of a discrimination claim, if a plaintiff successfully establishes a *prima facie* case of discrimination, a defendant meets its resulting burden of production by "introduc[ing] evidence, which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr.*, 509 U.S. at 509, 113 S.Ct. 2742. In other words, the factfinder's general duty to draw all reasonable inferences in favor of the nonmovant does not require that the court make a credibility determination on the defendant's evidence at the summary judgment stage, even if it has reason to disbelieve that evidence. *Id.*

### DISCUSSION

### I. TITLE VII AND THE ACRA

A Title VII religious discrimination claim may be brought under several possible theories, including disparate treatment on account of religion or failure to accommodate religious beliefs.[7] *Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 603 (9th Cir.2004). The district court correctly recognized that the Arizona Civil Rights Act is "generally identical" to Title VII, and therefore "federal Title VII case law [is] persuasive in the interpretation of [the Arizona] Civil Rights Act." *Higdon v. Evergreen Int'l Airlines, Inc.*, 138 Ariz. 163, 673 P.2d 907, 909–10, n. 3 (1983).

---

7. There is no evidence in the original complaint, ensuing summary judgment memoranda or the current appeal that Bodett ever intended to use this theory of religious discrimination in making her Title VII claim. Accordingly, it has been waived and we need not engage in hypotheticals. *See Ullah*, 976 F.2d at 514.

■ Disparate treatment claims must proceed along the lines of the praxis laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. A discrimination complainant must first establish a *prima facie* case of disparate treatment. *McDonnell Douglas* outlined one method of establishing such a case based on certain forms of commonly available circumstantial evidence, 411 U.S. at 802, 93 S.Ct. 1817, but the specific method for appropriately establishing a *prima facie* case will vary depending on "differing factual situations." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In general, a plaintiff must present evidence of "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such action was based upon race or another impermissible criterion." *Gay v. Waiters' Union*, 694 F.2d 531, 538 (9th Cir.1982) (citations and internal quotation marks omitted).

■ Upon these showings, the burden shifts to the defendant to produce some evidence demonstrating a legitimate, nondiscriminatory reason for the employee's termination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the defendant meets this burden of production, any presumption that the defendant discriminated "drops from the case," and the plaintiff must then show that the defendant's alleged reason for termination was merely a pretext for discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 507–08, 113 S.Ct. 2742. The burden of persuasion, as opposed to production, however, remains with the plaintiff at all times. *Id.* at 511, 113 S.Ct. 2742. A plaintiff "may prove pretext' either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1196 (9th Cir. 2003) (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089).

The evidence proffered can be circumstantial or direct. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221–22 (9th Cir. 1998). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial. . . . Direct evidence is evidence, which, if believed, proves the fact of discriminatory animus without inference or presumption." *Id.* at 1221. "[W]here direct evidence is unavailable, however, the plaintiff may come forward with circumstantial evidence . . . to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable. Such evidence . . . must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of [a prohibited ground]." *Id.* at 1222.

■ In the context of a disparate treatment claim based on religious discrimination, we recently outlined methods by which a plaintiff can meet his or her *prima facie* burden. He or she must show that "(1) [s]he is a member of a protected class; (2)[s]he was qualified for [her] position; (3)[s]he experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, *or* other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson*, 358 F.3d at 603 (emphasis added).

■ The district court employed a *prima facie* test requiring Bodett to show that "other similarly situated employees

outside of the protected class were treated more favorably." Order No. CIV 01–1879, 4, *citing St. Mary's Honor Ctr.*, 509 U.S. at 506, 113 S.Ct. 2742; *Tempesta v. Motorola, Inc.*, 92 F.Supp.2d 973, 979 (D.Ariz. 2000). Under this test, the district court found that "[a]lthough Bodett has shown membership in a protected class, that she was performing in a satisfactory manner, and that she suffered an adverse employment action, she did not show through the comparators that any similarly situated individual outside her protected category was treated more favorably," and had therefore most likely failed to make a *prima facie* case.

A plaintiff may show *either* that similarly situated individuals outside her protected class were treated differently, *or* "other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson*, 358 F.3d at 603. As the district court correctly noted, Bodett failed to present any legitimate "comparator" evidence on her religious discrimination claim.[8] Viewing the evidence that she did present to the district court in the light most favorable to Bodett, we cannot say that she has demonstrated other circumstances surrounding her termination that demonstrate a bias or animus against her religion that give rise to an inference of discrimination. *Id.*

 In any event, the district court went on to the second step of *McDonnell Douglas* on the assumption that Bodett

had made a *prima facie* case. Shifting the burden of production to Cox, the district court concluded that "[b]ased on Bodett's admissions, the Court finds Cox has shown a legitimate nondiscriminatory reason for terminating Bodett." Moreover, because Bodett was unable to counter this production with persuasive evidence that "Cox did not honestly believe its proffered reasons" for termination, the district court found that Bodett had failed to demonstrate a triable issue of fact with regard to pretext.

To determine whether Cox met its burden of production, this court must take Cox's evidence supporting its alleged reason for terminating Bodett—that she had violated the facial terms of its harassment policy—as true. *St. Mary's Honor Ctr.*, 509 U.S. at 509, 113 S.Ct. 2742. As explained above, the Cox policy clearly stated that an employee can be terminated for harassing or coercing another employee on the basis of sexual orientation. Bodett does not dispute that she was on constructive notice of this policy, or that she admitted to DeBruycker and Hutchinson that she had made certain statements to Carson. Specifically, Bodett acknowledged that she told Carson at the end of a performance review that she would be disappointed if Carson was dating another woman. From either an objective or subjective viewpoint, these statements clearly fall within the gambit of harassment, particularly because Bodett was in a position of authority over Carson. At the summary

---

8. In her response to Cox's motion for summary judgment, Bodett presented comparator evidence in the context of her claims for race and sex discrimination. Bodett makes no mention of any such evidence on her religious discrimination claim. Although she cites to no case law in her opposition to summary judgment, Bodett claims that Cox's argument that she must show she was replaced by someone outside of her protected class in order to make a *prima facie* case is incorrect.

Likewise, on appeal, she argues that "it is not necessary to show that other similarly situated employees outside of the protected class were treated more favorably," and instead urges the court to apply our test for retaliation claims under Title VII, which only requires a plaintiff to show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. *See, e.g., Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir.2000).

judgment stage, these admissions alone are enough to "allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *Burdine,* 450 U.S. at 257, 101 S.Ct. 1089, but instead by a facial violation of Cox's Policy.

The burden of persuasion rightly remained with Bodett to then show pretext, and she failed to come forward with any direct evidence that religious discrimination more likely motivated Cox to terminate her. *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. Reliance on her discipline and complaint-free record is not sufficient to raise an inference that Cox was more likely motivated by her religion than by the behavior complained of by Carson.[9] A complaint-free record is not substantial evidence in the context of this case, where it is undisputed that at the time of Bodett's termination, Cox was faced with Carson's complaint. *See Godwin,* 150 F.3d at 1222.

Bodett argues alternatively that Cox's stated reason for her termination—that she violated their longstanding harassment policy—is "unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. She offers two reasons why this is so: (1) her behavior toward Carson viewed in the light most favorable to Bodett cannot constitute "harassment" under the policy, and (2) Cox did not follow the discretionary steps that typically precede termination when one of its employees violates its Policy,[10] thereby indicating that a violation of that policy was not the true motivation for the termination. Neither of these assertions is supported by the evidence submitted by Bodett for this purpose.

With regard to the first assertion, Bodett's admitted behavior, taken in isolation of any evidence or argument by Cox, is sufficient to support a reasonable conclusion that Bodett harassed Carson. In her deposition, Bodett stated that she informed Carson that "the Bible says that homosexuality is a sin," that "the relationship [with a woman] that she was in, was probably the cause of the turmoil and unhappiness in her life," and that if she was dating another woman "I would be disappointed." She even admitted that upon the last comment, which was made at the end of a performance review, "I could tell [by] the way [Carson] responded to what I had said that she was uncomfortable...." Again, under the plain terms of Cox's policy, these exchanges with a subordinate employee could certainly constitute harassment, and Bodett's proffered evidence only supports the assertions by Cox's management that they took Bodett's admissions as facial violations of company policy.

With regard to the second assertion, Bodett admitted in her deposition that she was aware that under Cox's policy there are circumstances where an employee could be fired without prior warning even though the usual process involved a warning, and that discriminating against someone based on their sexual orientation was forbidden by company policy. Moreover, both DeBryucker and Hutchinson testified in their depositions that before they even interviewed Bodett concerning Carson's allegations, they agreed that if Bodett admitted to making certain statements, such admission would betray a violation of Cox's

---

**9.** That her "expressions" may in some way be protected as a *bona fide* religious belief is irrelevant to a disparate treatment inquiry, and would be better suited to a failure to accommodate claim which Bodett failed to make. *See Balint v. Carson City, Nev.,* 180 F.3d 1047, 1050 n. 3 (9th Cir.1999) (en banc).

**10.** Other abuses of the GHP could, within the discretion of management, be dealt with by corrective counseling, including verbal and written counseling prior to any discharge.

policy. When DeBryucker and Hutchinson informed Bodett that her behavior was in gross violation of the company harassment policy, Bodett admits responding that "sometimes there is a higher calling than a company policy," an acknowledgment that her actions may very well have violated the policy.

Taken together, this evidence shows that it was within the power of management under the harassment policy to terminate Bodett without prior warning, and that failure to take additional steps does not in any way undermine Cox's interpretation of Bodett's actions as harassment requiring termination. Because Bodett failed to offer any other evidence of animus towards her religious beliefs as the true motivation for her termination, or that Cox's proffered reason for termination was false, she has failed to raise a genuine issue of material fact as to whether the reason Cox gave for terminating her was a pretext for discrimination. Under the *McDonnell Douglas* burden shifting framework, summary judgment in favor of Cox was therefore appropriate on this claim. 411 U.S. at 802, 93 S.Ct. 1817.

## II. STATE LAW CLAIMS

### A. Wrongful discharge

■ Bodett claims breach of contract and wrongful discharge under the Arizona Employment Protection Act (AEPA), Ariz. Rev.Stat. §§ 23–1501 to –1502. To challenge the termination of her employment under AEPA, Bodett must demonstrate one of four theories of liability in order to state a claim as a matter of law: (1) termination in breach of a written contract (signed by both the employer and employee or expressly included in an employment handbook) setting forth that the employment relationship shall remain in effect for a specified duration of time or otherwise expressly restricting the right of either

party to terminate the employment relationship; (2) termination in violation of an Arizona statute (including the ACRA); (3) termination in retaliation for the refusal to violate the Arizona Constitution or an Arizona statute; or (4) "in the case of a public employee," if the employee has a right to continued employment under either the United States or Arizona Constitution. Ariz.Rev.Stat. § 23–1501(2), (3)(a)-(d).

■ Bodett never made a breach of contract claim in her original complaint, and cannot now make such an argument on appeal under § 23–1501(3)(a). *See supra* note 2; *Marsh,* 194 F.3d at 1052. As discussed above, Bodett has also failed to make a *prima facie* showing raising an inference of disparate treatment based on religion under the ACRA and has therefore failed to show that her termination has violated an Arizona statute under § 23–1501(3)(b). Nor can she now make a retaliation argument under § 23–1501(3)(c) because she failed to exhaust her administrative remedies as dictated by the ACRA, Ariz.Rev.Stat. § 41–1481. Failure to do so constitutes waiver of any subsequent civil claim. *See Ornelas,* 587 P.2d at 266–67. Finally, relief under § 23–1501(3)(d) is precluded by Cox's status as a private employer. Summary judgment as to this claim was appropriate.

### B. Intentional Infliction of Emotional Distress

■ With respect to her state law tort claim for intentional infliction of emotional distress, an Arizona plaintiff must demonstrate that: (1) the conduct by defendant was "extreme" and "outrageous"; (2) the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct; and (3) severe emotional distress actually resulted from the defendant's conduct. *See Ford v.*

*Revlon, Inc.*, 153 Ariz. 38, 734 P.2d 580, 585 (1987). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Watts v. Golden Age Nursing Home*, 127 Ariz. 255, 619 P.2d 1032, 1035 (1980) (quoting Restatement (Second) of Torts, § 46 cmt. h (1977)). Summary judgment is only inappropriate "when reasonable minds could differ in determining whether conduct is sufficiently extreme or outrageous." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 905 P.2d 559, 563 (1995).

■ Bodett alleged in her initial complaint that Cox's conduct was "intentional, extreme and outrageous and was a proximate cause of Plaintiff's mental anguish and severe emotional distress." According to Bodett, Cox's actions were extreme and outrageous because: (1) she was accused of performing an "exorcism" on Carson;[11] (2) she was accused of proselytizing and harassing Carson; and (3) she was terminated without notice or severance pay and lost her stock options, salary and five weeks of vacation.

In support of her claim for severe emotional distress, Bodett stated that: (1) she suffered from shock and stress induced by her termination; (2) she was depressed, moody and troubled, and felt estranged from friends and co-workers at Cox; (3) she physically manifested emotional disturbance causing her to seek medical care including a prescription for anti-depressants; and (4) her husband suffered emotional distress from watching Bodett suffer.

In light of the extremely high burden of proof for demonstrating intentional infliction of emotional distress in Arizona, no reasonable jury could find Cox's actions in terminating Bodett without severance "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Cluff v. Farmers Ins. Exch.*, 10 Ariz.App. 560, 460 P.2d 666, 668 (1969), *overruled on other grounds, Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 783 P.2d 781, 784 (1989). This type of termination goes on every day in the corporate world, particularly when the employee has violated the terms of an existing employment policy.

Bodett also claims that Cox's allegation in its position statement to the EEOC that she performed an "exorcism" on Carson was outrageous.[12] In her deposition Carson referred to this incident as Bodett making her "born again," an assertion Bodett does not dispute. Whether the difference in making someone "born again" and performing an "exorcism" on them is so extreme as to "go beyond all possible bounds of decency" is doubtful. *Cluff*, 460 P.2d at 668.

Arizona courts have typically found false accusations alone not enough to constitute an intentional infliction of emotional distress. *See, e.g., Duhammel v. Star*, 133 Ariz. 558, 653 P.2d 15 (1982) (false accusa-

---

11. Bodett fails to mention this in her appellate brief, but she did raise this issue specifically in her response to Cox's motion for summary judgment. Because we review a grant of summary judgment de novo, taking all facts presented in a light favorable to the nonmovant, this fact can properly be considered in assessing the merits of Bodett's emotional distress claim.

12. The EEOC statement by Cox qualifies this allegation by stating that it was part of Carson's complaint regarding Bodett, but De-Bryucker admits in her deposition that it was herself, not Carson, that labeled the coaching session incident an "exorcism." Either way, Cox included the allegation in its position statement to the EEOC.

tions against police officer made to city council and newspaper reporters are not outrageous conduct justifying claim for emotional distress). *Cf. Johnson v. McDonald*, 197 Ariz. 155, 3 P.3d 1075 (1999) (accusations already a part of public record are an insufficient basis for intentional infliction of emotional distress claim) (citing *Benishek v. Cody*, 441 N.W.2d 399(Iowa Ct.App.1989) (accusing long-time employee of embezzlement and firing her was not extreme and outrageous conduct); *Batson v. Shiflett*, 325 Md. 684, 602 A.2d 1191 (1992) (even though accusations of conspiracy, perjury and falsification of records in labor dispute were defamatory, they did not satisfy exacting standard for extreme and outrageous conduct); *Hanssen v. Our Redeemer Lutheran Church*, 938 S.W.2d 85(Tex.App.1996) (accusing employee of misappropriating church funds was not deemed extreme and outrageous conduct)).

■ Moreover, even if she could show reckless disregard by Cox in employing a stigmatic characterization of her behavior, Bodett has yet to put forth evidence supporting her claims of specific manifestations of emotional distress. Although she has alleged both in her affidavit and her statement of facts that she was placed on anti-depressants as a result of her termination and that she is now fearful of having to divulge the grounds of her termination to any new potential employers, Bodett previously testified in her deposition that she had not been placed on any medication as a result of defendant's actions. *See Kennedy v. Allied Mutual*, 952 F.2d 262, 266 (9th Cir.1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior testimony."). In light of Bodett's failure to raise a genuine issue of material fact that could demonstrate Cox's behavior was "extreme and outrageous" under Arizona law, summary judgment on this claim was appropriate.

## III. CONSTITUTIONAL CLAIMS

■ Cox is a private employer and as such, is not subject to the constitutional strictures applied to state actors by both the federal and Arizona state constitutions. *See Central Hardware Co. v. NLRB*, 407 U.S. 539, 547, 92 S.Ct. 2238, 33 L.Ed.2d 122 (1972); *Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 746–47 (9th Cir. 2003); *State Farm Fire & Cas. Co. v. Powers*, 163 Ariz. 213, 786 P.2d 1064, 1067 (1989). Cox is permitted under Title VII to create an internal harassment policy designed to equally protect its employee's rights. Bodett may only freely exercise her First Amendment rights as long as such exercise does not infringe on the rights of others by manifesting discrimination prohibited by Cox's harassment policy. *See Peterson*, 358 F.3d 599, 603–05. *See also* ARIZ. CONST. Art. II, § 6("every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right."). Summary judgment on Bodett's constitutional claims was appropriate.

## CONCLUSION

Bodett has failed to demonstrate that Cox's proffered reason for termination— that she had violated their harassment policy—was a pretext for termination motivated by religious discrimination. Accordingly, her Title VII and state law disparate treatment claims must fail. Because she did not raise a failure to accommodate theory, that ground is waived. She has also failed to demonstrate a triable issue of fact with regard to her state law claims of wrongful discharge and intentional infliction of emotional distress. As a final matter, her constitutional claims against Cox, a private employer, are misplaced and also

without merit. Summary judgment in favor of Cox is AFFIRMED.