# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LYNN NOYES,
        *Plaintiff-Appellant,*

v.

KELLY SERVICES, a corporation,
        *Defendant-Appellee.*

No. 04-17050

D.C. No.
CV-S-02-02685-
GEB/PAN

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, District Judge, Presiding

Argued and Submitted
November 15, 2006—San Francisco, California

Filed May 29, 2007

Before: Procter Hug, Jr. and M. Margaret McKeown,
Circuit Judges, and Barry Ted Moskowitz,* District Judge.

Opinion by Judge McKeown

---

*The Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

## COUNSEL

M. Catherine Jones, Law Office of M. Catherine Jones, Nevada City, California, for the plaintiff-appellant.

Tyler M. Paketau, Winston & Strawn LLP, San Francisco, California, for the defendant-appellee.

## OPINION

McKEOWN, Circuit Judge:

In this employment discrimination case, we address the plaintiff's burden to raise a triable issue of fact as to pretext under the familiar *McDonnell Douglas* burden-shifting regime in the context of a less familiar claim of "reverse" religious discrimination. Lynn Noyes alleges that a supervisory employee at her former employer, Kelly Services, Inc. ("Kelly Services"), was a member of a small religious group, the Fellowship of Friends ("Fellowship"), and that he repeatedly favored and promoted other Fellowship members. Noyes claims that she was passed over for a promotion because she does not adhere to the religious beliefs of the Fellowship, and that a Fellowship member was promoted instead. She appeals

the district court's order granting summary judgment in favor of Kelly Services on her Title VII disparate treatment claim and dismissing her state law claims for lack of subject matter jurisdiction.

We reverse the grant of summary judgment as to Noyes' disparate treatment claim because the district court misapplied the applicable standard on summary judgment and because genuine issues of material fact exist as to pretext. We also reverse the dismissal of Noyes' state law claims and remand with instructions to the district court to consider whether it may exercise diversity or supplemental jurisdiction over those claims.

## BACKGROUND[1]

### A. NOYES' EMPLOYMENT HISTORY WITH KELLY SERVICES

Kelly Services provides temporary workers to other companies. Noyes worked as a permanent employee at Kelly Services in its computer software and multimedia department from October 1994 until May 2004, when she was laid off. At the time of the lay-off, she held the title of Software Developer. In April 2001, Noyes was passed over for a promotion to the position of Software Development Manager. Noyes challenges Kelly Services' failure to promote her in April 2001, not her termination in May 2004.

### B. THE FELLOWSHIP OF FRIENDS

The Fellowship, founded in the 1970s, is a religious organization whose followers adhere to "Fourth Way" principles.

---

[1]In this factual discussion, we view the facts in the light most favorable to Noyes and draw all reasonable inferences in her favor, as she is the nonmoving party on summary judgment. *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004).

The Fellowship describes itself as focusing on "an esoteric interpretation of religion associated with teachings of the Old and New Testaments, traceable also in Greek philosophy, and probably originating in Egypt and Asia." The Fellowship characterizes itself as "more than a philosophy or theory . . . it comprises a system of ideas that, when fully embraced, is a way of life." The Fellowship has approximately 2000 members, about one-third of whom live near or on a Fellowship-owned compound in Apollo, California. Fellowship members are required to donate at least ten percent of their gross monthly income to the Fellowship.

## C. THE DISPUTED PROMOTION DECISION

In April 2001, the position of Software Development Manager became available at Kelly Services. William Heinz, a top-level management employee and a member of the Fellowship, was in charge of filling the position. Several employees were considered for the position — Noyes, Donna Walker and Joep Jilesen. Neither Noyes nor Walker are members of the Fellowship; Jilesen is a member of the Fellowship. No outside candidates were considered for the position.

Although Heinz had final decision-making authority over the promotion, during the selection process, he received input from other employees. Heinz told at least two of those employees that Noyes was not interested in receiving the promotion. For example, Maya Bonhoff, a manager, testified that she did not consider Noyes for the promotion because Heinz told her that Noyes did not want to be a manager and that Heinz had "something else that he really needed [Noyes] to do." From Bonhoff's perspective, Noyes had been "taken off the table" as a candidate for the Software Development Manager position. When William Galvin suggested that Noyes would be "very good" as Software Development Manager, Heinz told him that Noyes was not interested in the position.

Noyes claimed that she never told anyone at Kelly Services that she was not interested in becoming a manager, and that Heinz's statements to that effect were simply not true. In fact, Noyes wanted to become a manager and, in 2000, she applied for the only management position that was previously openly advertised in her field. Mario Fantoni, a Fellowship member, received that promotion.[2]

Heinz originally offered the Software Development Manager position to Walker, who declined the job because she had already held a similar position and thought that it would be a professional step backwards. After Walker declined, Bonhoff recommended to Heinz that he promote Jilesen. Heinz expressed some reluctance because there had been "issues raised in the past with Fellowship members being perceived as being given favoritism." Heinz ultimately offered the promotion to Jilesen, who accepted.

Noyes claimed that she was more qualified for the Software Development Manager position than Jilesen, because she had worked at Kelly Services for nearly six years longer and she had an MBA, which Jilesen did not. According to Noyes, Heinz had also shown other preferential treatment to Jilesen, including paying him a higher salary, which Heinz told Noyes was necessary for Jilesen's "lifestyle."

## D.  NOYES' COMPLAINTS REGARDING RELIGIOUS DISCRIMINATION

Noyes lodged a verbal complaint about Heinz's discriminatory employment practices with Kelly Services' Human Resources Department in May 2001. She claimed Kelly Services did nothing in response, and Kelly Services pointed to no evidence in the record indicating otherwise. Noyes then

---

[2]According to Noyes, she should have been allowed to compete for at least four other management-level promotions between 1997 and 2001. Of those four promotions, three were given to Fellowship members.

filed an administrative charge of discrimination with the California Department of Fair Employment and Housing in August 2001.

In December 2002, Noyes filed this action, alleging claims for: (1) employment discrimination in violation of 42 U.S.C. § 1981a[3] and 42 U.S.C. § 2000e-2 ("Title VII"), (2) employment discrimination in violation of California's Fair Employment & Housing Act, Cal. Gov't Code § 12940, (3) failure to promote in violation of public policy, (4) breach of employment contract, (5) breach of the covenant of good faith and fair dealing, and (6) intentional infliction of emotional distress.

The district court granted summary judgment as to the Title VII claims, and dismissed the state law claims for lack of subject matter jurisdiction after declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367.

We review the district court's grant of summary judgment de novo, drawing all reasonable inferences supported by the evidence in favor of Noyes, the nonmoving party. *See Bodett*, 366 F.3d at 742. A genuine dispute of material fact exists where "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56. In our de novo review, we also determine "whether the district court correctly applied the relevant substantive law." *Stout v. Potter*, 276 F.3d 1118, 1121 (9th Cir. 2002).

---

[3]Although Noyes alleged religious discrimination under 42 U.S.C. § 1981, the district court did not address the § 1981 claims. It is well established, however, that § 1981 does not apply to claims of religious discrimination. *See, e.g.*, *Shah v. Mt. Zion Hospital & Medical Center*, 642 F.2d 268, 272 & n.4 (9th Cir. 1981) (noting that 42 U.S.C. § 1981 "only prohibits racial discrimination" and not the other forms of discrimination protected under Title VII). Thus, Noyes' claims under § 1981 are without merit in any event.

ANALYSIS

I. APPLICATION OF *McDONNELL DOUGLAS* BURDEN-SHIFTING REGIME TO NOYES' TITLE VII DISPARATE TREATMENT CLAIM

The Supreme Court's landmark case regarding employment discrimination claims brought under Title VII, *McDonnell Douglas v. Green*, sets forth a proof framework with two distinct components: (1) how a plaintiff may establish a prima facie case of discrimination absent direct evidence, and (2) a burden-shifting regime once the prima facie case has been established. 411 U.S. 792, 802-04 (1973). In the summary judgment context, the plaintiff bears the initial burden to establish a prima facie case of disparate treatment. *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000). If the plaintiff succeeds in showing a prima facie case, the burden then shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its employment decision. *Id.* at 1123-24. Should the defendant carry its burden, the burden then shifts back to the plaintiff to raise a triable issue of fact that the defendant's proffered reason was a pretext for unlawful discrimination. *Id.* at 1124. The central dispute in this case is whether Noyes' evidence was sufficient to raise a triable issue of fact as to pretext.

A. NOYES' PRIMA FACIE CASE

[1] A prima facie case of employment discrimination may be established through direct evidence of discriminatory intent *or* a presumption arising from a showing of objective factors such as those outlined in *McDonnell Douglas* and its progeny. *See* 411 U.S. at 802. In *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217 (9th Cir. 1998), we adapted *McDonnell Douglas* to the failure to promote context, holding that a prima facie case requires the employee to show: "(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an

adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably." *Id.* at 1220.

**[2]** Although we have not previously outlined the precise contours of a prima facie showing of reverse religious discrimination, the district court's application of *Godwin* in this context was appropriate. The district court concluded that Noyes' evidence was sufficient to make out a prima facie case of disparate treatment with respect to the promotion at issue, and Kelly Services does not challenge that conclusion on appeal. Of course, the "protected class" element is not comparable because Noyes does not claim she was part of a protected class, i.e., that she adheres to a particular religion. Rather, her claim is that her lack of adherence to the religious beliefs promoted by the management of Kelly Services was the genesis of the discrimination.

**[3]** The Tenth Circuit's discussion on this point is instructive. In *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033 (10th Cir. 1993), the court reasoned that the "protected class" showing required in a traditional race or sex discrimination claim does not apply to this type of nonadherence or reverse religious discrimination claim because "it is the religious beliefs of the employer, and the fact that [the employee] does not share them, that constitute the basis of the [religious discrimination] claim." *Id.* at 1038. We recognize, as did the district court, that it is appropriate to tailor the elements of a prima facie showing according to the particular circumstances of each case. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (recognizing that *McDonnell Douglas*'s suggested method for setting out a prima facie case "was never intended to be rigid, mechanized, or ritualistic.").

### B.   KELLY SERVICES' BURDEN TO ARTICULATE A LEGITIMATE, NONDISCRIMINATORY REASON FOR NOT PROMOTING NOYES

**[4]** Because Noyes established a prima facie case, the burden of production then shifted to Kelly Services to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. *McDonnell Douglas*, 411 U.S. at 802. To meet this burden, "the defendant must clearly set forth, through the introduction of admissible evidence," reasons for its employment decision which, if believed by the trier of fact, would support a finding that the employment action was not a result of unlawful discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

**[5]** Kelly Services offered several pieces of evidence in support of its selection of Jilesen rather than Noyes. Heinz first offered the position to Walker, a non-Fellowship member, who declined the position. After Walker declined, Bonhoff, a non-Fellowship member, recommended that Jilesen be promoted. Bonhoff set forth the qualities that she was looking for in a Software Development Manager and stated that "[q]uite simply, the person whom I felt possessed all of these qualities was Joep Jilesen." Heinz agreed that Jilesen was the right person for the job. Heinz also stated that Kelly Services made the decision to promote Jilesen through a "consensus" of the "management group." This evidence meets Kelly Services' burden to articulate a legitimate, nondiscriminatory reason for its employment decision. *See id.*; *McDonnell Douglas*, 411 U.S. at 802.[4]

---

[4]In its order, the district court reasoned that "[s]ince Noyes does not contradict Bonhoff's asserted reasons for recommending Jilesen's promotion, *Kelly Services has demonstrated a legitimate reason for promoting Jilesen* instead of Noyes to the Software Development Manager position." (emphasis added). The district court is incorrect that Noyes failed to dispute Bonhoff's reasons. Noyes disputed the basis for Bonhoff's recommendation and the claim that Jilesen was the best qualified candidate for

C. **NOYES' BURDEN TO SHOW THAT KELLY SERVICES' REASONS WERE A PRETEXT FOR UNLAWFUL DISCRIMINATION**

1. **PROOF OF PRETEXT**

**[6]** Once Kelly Services satisfied its burden to articulate a nondiscriminatory reason for its promotion decision, the burden shifted back to Noyes to come forward with evidence that the proffered reasons were a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804. Importantly, the "shift" back to the plaintiff does not place a new burden of production on the plaintiff. *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003). "[T]he factfinder may infer 'the ultimate fact of intentional discrimination' without additional proof once the plaintiff has made out her *prima facie* case if the factfinder rejects the employer's proffered nondiscriminatory reasons as unbelievable." *Id.*; *accord Chuang*, 225 F.3d at 1127.

"[A] plaintiff can prove pretext in two ways: (1) *indirectly*, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) *directly*, by showing that unlawful discrimination more likely motivated the employer." *Chuang*, 225 F.3d at 1127 (emphasis added) (citing *Godwin*, 150 F.3d at 1220-22); *see Burdine*, 450 U.S. at 256. "All of the evidence [as to pretext] — whether direct or indirect — is to be considered cumulatively." *Raad*, 323 F.3d at 1194.

**[7]** Where the evidence of pretext is circumstantial, rather than direct, the plaintiff must present "specific" and "substan-

the position. Although Kelly Services' evidence satisfies its burden of *production* to articulate a legitimate, nondiscriminatory reason for the failure to promote Noyes, to the extent the district court made a finding that the reason was in fact legitimate, the district court acted beyond the review permitted on summary judgment. *See Burdine*, 450 U.S. at 254-55.

tial" facts showing that there is a genuine issue for trial. *Godwin*, 150 F.3d at 1222. However, that requirement is tempered by our observation that, in the context of Title VII claims, the burden on plaintiffs to raise a triable issue of fact as to pretext is "hardly an onerous one." *Payne v. Northwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997).

## 2. THE DISTRICT COURT'S MISAPPLICATION OF *ST. MARY'S HONOR*

[8] The district court did not apply the proper law governing proof of pretext, but, rather, imposed a heavier burden on Noyes at summary judgment. According to the district court, to show pretext, Noyes had to "show[ ] *both* that [Kelly Services' proffered] reason was false, *and* that discrimination was the real reason." (emphasis by district court). This formulation can be traced to the following statement in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993), which addressed a merits determination rather than summary judgment: "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Id.* at 515 (emphases omitted). Taken out of context, this statement would appear to support an enhanced burden to show pretext. However, considered in the proper procedural posture, *St. Mary's Honor* clearly does not alter the burden on summary judgment.

In *St. Mary's Honor*, the Supreme Court considered the quantum of proof necessary for a plaintiff to *prove* that an employer's articulated reasons were pretextual, such that a court may *direct a finding as a matter of law* that intentional discrimination occurred. *Id.* at 505, 508-10 (addressing findings of fact and conclusions of law made after a bench trial); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 154 (2000) (Ginsburg, J., concurring) ("Whether the defendant was in fact motivated by discrimination is of course for the finder of fact to decide; that is the lesson of *St. Mary's Honor Center v. Hicks*."). The showing required to direct a

finding on the ultimate fact of intentional discrimination is obviously different and more difficult than the burden imposed on a plaintiff to raise a triable issue of fact as to pretext sufficient to defeat summary judgment.

**[9]** Because of its misreading of *St. Mary's Honor*, the district court required Noyes to prove that Kelly Services' articulated nondiscriminatory reasons were "false" and that intentional discrimination was the "real reason" for promoting Jilesen over Noyes. This approach misconstrues the burden on Noyes to raise a triable issue of fact regarding pretext. We reiterate that at the summary judgment stage, a plaintiff may raise a genuine issue of material fact as to pretext via (1) direct evidence of the employer's discriminatory motive or (2) indirect evidence that undermines the credibility of the employer's articulated reasons. *Raad*, 323 F.3d at 1194 (reaffirming two options for proving pretext by direct or indirect evidence) (citing *Godwin*, 150 F.3d at 1220-22).

### 3.  NOYES' EVIDENCE OF PRETEXT

**[10]** Noyes countered Kelly Services' purported nondiscriminatory reasons for promoting Jilesen with specific, substantial evidence that undermined the credibility of those reasons. Noyes' overarching complaint is that membership in the Fellowship permeated the promotion process and that Heinz, a Fellowship member and the ultimate decisionmaker, exercised his supervisory authority in favor of Fellowship members. The claim is made against the backdrop that Heinz recognized that perceived favoritism to Fellowship members was an ongoing issue. Noyes pointed to evidence that she was more qualified for the job than Jilesen and that Heinz's actions deprived her of fair and full consideration for the promotion. Based on this evidence, a reasonable factfinder could conclude that religiously-motivated discrimination was behind Heinz's promotion of Jilesen. Viewing Noyes' circumstantial evidence of pretext through the proper lens on sum-

mary judgment, we conclude that Noyes raised a triable issue of fact such that summary judgment was inappropriate.

Specifically, Noyes offered evidence that Jilesen's selection was tainted by Heinz's actions in telling other employees that Noyes was not interested in the promotion. Consequently, Noyes was not fully considered for the promotion. Contrary to Heinz's story, Noyes, who holds an MBA, wanted to become a manager. She previously applied for the only management position that was openly advertised in her field, Operations Manager, which went to a Fellowship member instead.

Although Heinz represented that Jilesen was chosen based on a management "consensus," two of the other managers Heinz claimed were part of the "consensus"—Bonhoff and Victoria Smart—did not recall reaching a management "consensus"[5] on the decision to promote Jilesen. Bonhoff testified that the ultimate decision was made by Heinz.

Noyes also showed that Heinz favored Jilesen in past employment decisions. Heinz initially pressured Noyes to support Jilesen's hire for a position Heinz created by telling her that Jilesen would have to leave the country if he did not get a job with Kelly Services. When Jilesen was hired, "[Heinz] told [Noyes] that he wanted to bring him in at a higher salary than was normal for the job so that [Jilesen] would have more money for his lifestyle." Although Jilesen had six years less seniority than Noyes and did not hold an MBA, as of June 2001, when they both held the position of Software Developer, Noyes was paid $59,000 while Jilesen was paid $63,800. "Facts tending to show that the chosen applicant may not have been the best person for the job are probative as they 'suggest that [the explanation] may not have been the real reason for choosing [the chosen applicant] over

---

[5]Nothing in the record documents the views or extent of participation of the third manager that Heinz claimed was part of the "consensus."

the [plaintiff].' " *Godwin*, 150 F.3d at 1222 (quoting *Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir. 1991)) (alteration in *Godwin*).

**[11]** Viewing the evidence in the light most favorable to Noyes, Heinz's credibility on the issue of why he chose Jilesen was severely undermined by conflicting evidence on the promotion process. *Cf. Reeves*, 530 U.S. at 152 (holding in trial context that evidence that the true decisionmaker was hostile to the employee undermined the credibility of the employer's proffered reason for terminating the employee); *Payne*, 113 F.3d at 1080 (holding that although a jury may ultimately accept an employer's "shifting explanations," such fact issues should not be resolved on summary judgment). A reasonable factfinder may find that Noyes' evidence renders Kelly Services' proffered reasons "unworthy of credence" because Heinz's actions preempted full consideration of Noyes despite her desire for the job and her superior qualifications. The evidence also supports a finding that Heinz had an unspoken motive for promoting Jilesen over Noyes— favoritism toward members of the Fellowship. We hold that Noyes' specific, substantial evidence undermining the credibility of Kelly Services' explanation for its promotion decision, coupled with her evidence as to favoritism, was sufficient to raise a genuine issue of fact as to pretext. *See Godwin*, 150 F.3d at 1222; *accord Raad*, 323 F.3d at 1195; *Chuang*, 225 F.3d at 1129; *Payne*, 113 F.3d at 1080.

The district court's conclusion to the contrary misapplied *St. Mary's Honor*, and imposed a higher burden of proof on Noyes. The district court concluded that

> [s]ince Heinz was responsible for the decision to promote Jilesen, evidence that he told others Noyes was not interested in the position, and showed a preference toward Jilesen in prior employment decisions*, could support a finding that Heinz did not select Jilesen for promotion based on the non-*

> *discriminatory reasons articulated by Bonhoff. That*
> *evidence does not, however, support a finding that*
> *Noyes was passed over for the promotion specifi-*
> *cally because she was not a member of the Fellow-*
> *ship.*

(emphasis added).

Once the district court concluded that Noyes raised a triable question that the promotion decision was not consistent with Kelly Services' stated reasons, the question of whether the "real reason" for the promotion decision was unlawful discrimination should have gone to the jury. Instead, the district court required Noyes to prove the ultimate issue of unlawful discrimination — that "she was passed over for the promotion specifically because she was not a member of the Fellowship." In doing so, the district court erroneously heightened the standard on summary judgment.

The district court also substituted its own judgment that the evidence — repeated favoritism of a more junior, less-qualified Fellowship-member employee over a more senior, more qualified non-Fellowship member — did not support an inference of discrimination on the basis of Noyes' non-affiliation with the Fellowship. To do so was error. *See, e.g.*, *Chuang*, 225 F.3d at 1129 (reversing summary judgment and reiterating that "[i]t is not the province of a court to spin such evidence in an employer's favor when evaluating its motion for summary judgment. To the contrary, all inferences must be drawn in favor of the non-moving party.").

Although the triable issues of fact set out above are sufficient to reverse summary judgment, Noyes also proffered statistical evidence regarding the Fellowship and promotions at Kelly Services. Statistical evidence may support a plaintiff's showing of pretext in a disparate treatment claim. *See Diaz v. AT&T*, 752 F.2d 1356, 1362-63 (9th Cir. 1985).

Noyes offered evidence that Heinz "repeatedly brought in Fellowship members as temporary contractors" and "consistently appointed Fellowship members to management jobs where one of the duties is to select contractors." Before the April 2003 layoffs, thirteen of the thirty-five full-time employees were Fellowship members; between 1998 and November 2001, five of the eleven full-time hires in the Development Group were Fellowship members (including Jilesen); and two out of three recent hires in the "Test Bay" area were Fellowship members. Noyes also claimed that four of the five management-level promotions made between 1997 and April 2001 were given to Fellowship members.

[12] The district court downplayed Noyes' statistical evidence, concluding that "[r]egardless of whether this evidence 'show[s] a statistically significant relationship' between positive employment decisions and Fellowship membership, it must be treated with skepticism because it 'fail[s] to account for other relevant variables,' " citing *Pottenger v. Potlatch Corporation*, 329 F.3d 740, 748 (9th Cir. 2003) (alterations by district court). Although we agree that this statistical evidence standing alone was insufficient to raise a triable issue of fact, coupled with Noyes' other evidence, the numerical picture buttressed Noyes' challenge that Kelly Services' proffered reasons for its promotion decision were a pretext for unlawful discrimination. *See Chuang*, 225 F.3d at 1129 (viewing plaintiff's evidence of pretext cumulatively); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1476 (9th Cir. 1995) (upholding admission of statistical evidence that did not isolate all potentially relevant variables in support of disparate treatment age discrimination claim while acknowledging that "the statistical disparities [might not be] so substantial so as to infer causation from the statistics alone").

## II. STATE LAW CLAIMS

After declining to exercise its discretionary supplemental jurisdiction in the absence of any remaining federal claim, the

district court dismissed Noyes' state law claims for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1367. However, Noyes' complaint alleged diversity jurisdiction under 28 U.S.C. § 1332 as an alternative basis for jurisdiction over the state law claims. Although Kelly Services agrees that diversity jurisdiction exists, because subject matter jurisdiction is a threshold issue, on remand, jurisdiction must be determined by the court, not by concession of the parties.

**[13]** In the absence of diversity jurisdiction, the district court should reconsider whether to exercise supplemental jurisdiction under § 1367, in light of our remand for trial on Noyes' Title VII disparate treatment claim.

## III. RULE 16(b) ISSUES ON REMAND

### A. HEINZ'S DEPOSITION TESTIMONY

Noyes moved under Federal Rule of Civil Procedure 16(b) to modify the scheduling order and under Rule 56(f) to postpone consideration of the summary judgment motion until she could depose Heinz — a central defense witness. The district court denied the motions.

Noyes originally noticed Heinz's deposition to take place more than two weeks prior to the discovery cut-off. At Kelly Services' request, the deposition was rescheduled several times, pushing it past the discovery cut-off date. The parties stipulated to an extension of the discovery deadline to permit further discovery, including the Heinz deposition. The court took no action on the proposed order. Heinz failed to appear for his deposition on the rescheduled date, which would have allowed sufficient time for Noyes to utilize the testimony in her summary judgment opposition. Heinz sat for his deposition two days *after* the due date for Noyes' opposition to Kelly Services' summary judgment motion.

The district court concluded that Noyes had failed to show diligence in completing Heinz's deposition and, on that basis,

denied the Rule 16(b) and Rule 56(f) motions. The circumstances of scheduling Heinz's deposition are not particularly unusual, as counsel often agree to continuances as a matter of courtesy. Nonetheless, the ultimate result left Noyes prejudiced due to a delay caused by an adverse witness. Although the appeal of the denial of the Rule 56(f) motion is moot in light of the remand, the question whether the discovery cutoff should have been extended to encompass Heinz's deposition remains a live issue.

**[14]** In view of Noyes' timely noticing of Heinz's deposition, Kelly Services' multiple requests to delay the deposition, and Heinz's failure to appear as scheduled, it was an abuse of discretion to deny the motion to modify the scheduling order.[6] *Cf. Garrett v. City & County of San Francisco*, 818 F.2d 1515, 1518-19 (9th Cir. 1987) (holding that district court improperly denied Rule 56(f) motion where the plaintiff in a Title VII action diligently pursued discovery but was unable to obtain complete responses prior to due date of response to the opposing party's motion for summary judgment).

## B. ROSS'S EXPERT TESTIMONY

After submission of the summary judgment motion without oral argument, at Noyes' request, the district court reopened discovery for twenty days to permit the parties to conduct expert discovery. Kelly Services did not oppose the request.

During the reopened discovery period, Noyes retained Rick Ross, a purported expert in destructive cults and controversial groups and movements, who claims to have particular expertise in the Fellowship. Before Noyes could submit a declara-

---

[6]Rule 16(b) provides that a district court's scheduling order may be modified upon a showing of "good cause," an inquiry which focuses on the reasonable diligence of the moving party. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). We review the denial of a Rule 16(b) motion for abuse of discretion. *Id.*

tion from Ross, the district court granted summary judgment in favor of Kelly Services on all claims. Based on the newly-obtained expert evidence, Noyes moved for reconsideration of the summary judgment ruling under Rule 59(e). The court denied Noyes' motion for reconsideration, concluding that Noyes had not shown good cause why she did not earlier obtain the expert discovery. Given that the district court reopened discovery so that Noyes could retain an expert, it was seemingly inconsistent for the district court to grant summary judgment without consideration of that supplemental evidence. Based on the record, we conclude that Noyes made a good faith showing that she was reasonably diligent in conducting discovery and that it would have been a financial and practical hardship for her to have obtained the expert discovery earlier in this case.

[15] In light of our reversal of summary judgment, Noyes' appeal of the denial of her Rule 59(e) motion for reconsideration is moot. We note, however, that because Noyes obtained expert discovery from Ross during the reopened discovery period, that evidence was timely, poses no Rule 16(b) problem, and should be available for use at trial. We offer no opinion as to the admissibility of Ross's testimony.

**REVERSED and REMANDED.**