**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TALOREN GOVAN, an unmarried man, | No. 11-16499 |
| Plaintiff - Appellant, | D.C. No. 2:10-cv-00057-DGC |
| v. | |
| SECURITY NATIONAL FINANCIAL CORPORATION, a Utah corporation; CRYSTAL ROSE FUNERAL HOME INCORPORATED, an Arizona corporation; GREER-WILSON FUNERAL HOME INCORPORATED, an Arizona corporation, | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Submitted December 6, 2012[**]
San Francisco, California

Before: SILVERMAN, GOULD, and CHRISTEN, Circuit Judges.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Taloren Govan appeals the district court's order granting summary judgment to defendants Security National Financial Corporation and the funeral homes Greer Wilson and Crystal Rose (collectively, "SNFC") on his claims of discrimination and retaliation based on race and religion in violation of Title VII, the Arizona Civil Rights Act, and 28 U.S.C. § 1981. We have jurisdiction pursuant to 28 U.S.C. § 1291. After *de novo* review, we affirm.

Govan worked at several funeral homes owned by SNFC between 2008 and 2010. He was hired at Crystal Rose Funeral Home in June 2008, and shortly after was promoted to manager. Govan was transferred to the financially ailing Adobe Chapel and changed from a salaried to an hourly employee. Reorganization did not save Adobe, which closed not long after Govan arrived. When Adobe closed, Govan's job was eliminated, and he was once again transferred, this time to be a runner at Greer Wilson, a third SNFC home. In March 2009, Govan's pay was cut as a part of a broad pay reduction program to avoid layoffs. His pay was cut more than others' to align his wage with his duties as a runner. Unhappy with his treatment, and allegedly having been subject to a few discriminatory comments, Govan filed a complaint with the EEOC in August 2009, alleging that SNFC discriminated against him on the basis of race and religion. The following month, Govan developed a bulging disk in his back and told his supervisor that he would

not return until he recovered. Govan was cleared to return to Greer Wilson in April 2010, but with a restriction that he not lift bodies. At that time, Greer Wilson management notified Govan that his former position was not available but offered him work on an on-call basis. Govan accepted this offer. Next, however, following a short period of work as a runner, Govan resigned on June 11, 2010. Crystal Rose and Greer Wilson closed in December 2010.

The district court properly granted summary judgment on Govan's claims that the various changes to his employment were adverse employment actions constituting disparate treatment based on his race and religion. We agree with the district court's judgment that Govan did not establish a prima facie case of discrimination under *McDonnell Douglas* for some of these changes to his employment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). But even if Govan had established a prima facie case for every change, SNFC proffered legitimate, nondiscriminatory reasons for each of its employment actions. *See Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir. 2005) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (2005)). Govan did not raise a genuine issue of material fact as to whether these legitimate, nondiscriminatory reasons were pretextual. *See id*. (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08 (2005); *see also Noyes v. Kelly Servs.*, 488 F.3d 1163, 1169 (9th Cir.

3

2007) (applying the *McDonnell Douglas* burden-shifting regime to a reverse religious-discrimination claim). The record tells the story of SNFC facing financial challenges and responding by moving employees, including Govan, to different posts and altering pay scale and changing hours. If the characterization is correct, that is not in itself actionable. The key question here was whether these financial developments and larger-picture changes were merely a cover for what was improper discriminatory treatment of Govan. Because, as the district court held, Govan did not raise a genuine factual issue on pretext, the general picture presented by management survived and the discrimination claims relating to these changes of position for Govan failed.

Govan next claims that SNFC subjected him to a hostile work environment on account of his race and religion. The district court properly granted SNFC's motion for summary judgment on this claim because the incidents Govan alleged were not "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

Govan also claims that SNFC unlawfully retaliated against him because he filed a charge of discrimination with the EEOC. Summary judgment was proper on this claim because Govan did not show a causal link between his protected

4

activity and the alleged materially adverse action, his change from full-time to on-call status after a long medical leave. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008). To establish a causal link sufficient to survive summary judgment based only on temporal proximity, the protected activity and the adverse action must be "very close," *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam), unless the plaintiff has presented a "valid reason for the delay" and offered "other evidence to support the inference of a retaliatory motive," *Porter v. Cal. Dept. of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005). Here the two events were more than six months apart—too distant to support an inference of causation based on timing alone. *See Clark Cnty.*, 532 U.S. at 273–274 (citing cases finding periods of three and four months too long). Govan's proffered "valid reason for the delay" is that SNFC retaliated against him when he returned from medical leave, which he argues was the "very first opportunity they had to adversely affect Mr. Govan's employment following his protected activity." But Govan still worked for SNFC after he filed his EEOC charge, so SNFC had time to retaliate against him before his injury if it had chosen to do so. Govan is left only with the timing of his alleged materially adverse employment action. In the circumstances shown by this record, Govan's proof is insufficient to establish a prima facie case of retaliation.

Finally, the district court correctly ruled that Govan's claim of negligent supervision is barred by the exclusive-remedy provisions of Arizona's workers' compensation statute, which preclude tort claims against an employer unless the employee's injury is caused by the employer's "willful misconduct." *See* Ariz. Rev. Stat. Ann. § 23-1022 (1995); *Irvin Investors, Inc. v. Super. Ct.*, 800 P.2d 979, 980–82 (Ariz. Ct. App. 1990).

We affirm the district court's rejection of Govan's intentional infliction of emotional distress claim because he did not oppose SNFC's motion for summary judgment on this claim and did not raise or support this claim in his opening brief. *See* Fed. R. App. P. 28(a)(9)(A).

**AFFIRMED**.