No. 2:15–CV–134–RMP.

United States District Court, E.D. Washington.

Signed Sept. 16, 2015.

Toni L. RICHARDS, Plaintiff,

v.

HEALTHCARE RESOURCES GROUP, INC., a Washington corporation; Crystal Larsen and John Doe Larsen, and the marital property comprised thereof; and Candice Nelsen and John Doe Nelsen, and the marital community comprised thereof, Defendants.

and Policy Nos. 6579–6286, 6580–7440, and 6581–8085.

Patrick Joseph Kirby, Patrick J. Kirby PLLC, Spokane, WA, for Plaintiff.

Courtney A. Garcea, Michael James Hines, Lukins & Annis, P.S., Spokane, WA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

ROSANNA MALOUF PETERSON, Chief Judge.

BEFORE THE COURT is Defendants' Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6), **ECF No. 7.** The Court heard oral argument on the motion on September 15, 2015, in Spokane, Washington. Plaintiff Toni L. Richards was represented by Patrick J. Kirby. Defendants were represented by Michael J. Hines and Courtney Garcea. The Court has reviewed the motion, all relevant filings, and is fully informed.

### BACKGROUND [1]

Plaintiff Toni L. Richards alleges that she has a record of several physical impairments and injuries, including: (1) "injuries to her spine and a record of medical procedures to her spine which substantially limits her ability to walk too far, to stand in one position for too long, to lift more than thirty-five (35) pounds, or to sit too long without adjustment"; (2) "nerve damage to both of her legs and pain that radiates down her legs"; (3) physical impairment and injuries to her knees requiring her to wear knee braces on both knees; (4) "respiratory impairments asthma and allergies which substantially limits [sic] her ability to breath"; and (5) treatment for depression and anxiety. ECF No. 1, Compl. ¶ 14.

Plaintiff states that on January 6, 2015, Defendant Healthcare Resource Group, Inc. ("HRG") hired her to work as a "Follow Up Analyst," or medical biller. ECF No. 1, Compl. ¶ 15. Prior to being employed with HRG, Plaintiff allegedly obtained services from the Washington Division of Vocation Rehabilitation ("DVR"). ECF No. 1, Compl. ¶ 12. DVR "help[s] disabled persons overcome barriers so that they may engage in gainful employment." ECF No. 1, Compl. ¶ 13. Plaintiff states that DVR provided her with "counseling, guidance, and vocation assessment [sic]" to help her overcome barriers to gainful employment associated with several physical impairments and injuries from which she suffered. ECF No. 1, Compl. ¶¶ 12, 14. Plaintiff alleges that she did not disclose her physical impairments or her association with DVR when she applied for the position with HRG. ECF No. 1, Compl. ¶¶ 11, 12.

Plaintiff began work on January 13, 2015. ECF No. 1, Compl. ¶ 17. She received some initial training, but was notified soon after she began employment that she would be transferred to a new account. ECF No. 1, Compl. ¶¶ 16, 19, 20. Two weeks later, an HRG trainer gave Plaintiff three days of training on the new billing software and procedures related to Plaintiff's position. ECF No. 1, Compl. ¶ 21. On January 30, 2015, Plaintiff was "able to perform her work duties on the new account at her workstation with assistance from the trainer as needed." ECF No. 1, Compl. ¶ 22.

Plaintiff alleges that on February 4, 2015, she sent an e-mail to Lindsay Berger, an HRG employee in the Human Re-

---

1. In their motion to dismiss, Defendants state several facts not included in Plaintiff's complaint. Rule 12(d) provides that "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court declines to treat Defendants' motion as one for summary judgment, and therefore will not consider these extrinsic facts provided by Defendants.

sources department, stating that she had "been working with the Department of Vocational Rehab" and that she needed to forward to DVR a copy of her job description for their records to enable DVR to close her case. ECF No. 1, Compl. ¶ 23. Ms. Berger directed Plaintiff to request a copy of her job description from her direct supervisor. ECF No. 1, Compl. ¶ 24. Thereafter, on the same day, Plaintiff forwarded to her direct supervisor, Defendant Candice Nelsen, the e-mail chain between her and Ms. Berger. ECF No. 1, Compl. ¶ 25. Plaintiff did not receive a response from Defendant Nelson, and on February 9, 2015, she asked Defendant Nelsen if she had received Plaintiff's e-mail. Defendant Nelson allegedly replied, "I get so many emails. I haven't gotten to it." ECF No. 1, Compl. ¶ 33. Plaintiff alleges that Defendant Nelsen "routinely and promptly read and replied to other work emails" from Plaintiff. ECF No. 1, Compl. ¶ 34.

On February 6, 2015, Plaintiff states that Defendant Nelsen, and Nelsen's immediate supervisor, Defendant Larsen, placed Plaintiff on a thirty day Performance Improvement Plan ("PIP"). ECF No. 1, Compl. ¶ 26. The PIP "indicated that [Plaintiff] had thirty (30) days to improve her job performance." ECF No. 1, Compl. ¶ 30. Plaintiff alleges that she disputed the validity of the PIP, informing Defendants Nelsen and Larsen that she had received negligible training during her first two weeks of employment, that she only had been working on her new account for two days, and that the criteria with which her performance was being assessed contradicted the training that Plaintiff had received from an HRG trainer. ECF No. 1, Compl. ¶ 27. Defendants Nelsen and Larsen presented Plaintiff with a printed PIP, which Plaintiff signed and returned to Defendant Nelson. Plaintiff alleges that the printed PIP contained no handwriting apart from her own signature

when she returned it to Defendant Nelsen. ECF No. 1, Compl. ¶ 28.

Plaintiff alleges that on February 6, 2015, at 5:44 p.m., an HRG manager sent an e-mail to Plaintiff and other HRG employees clarifying " 'potential confusion' regarding the proper billing methods used by Follow-up Analysts and the incorrect QA scoring criteria" used by one HRG trainer and by which Plaintiff's performance had been assessed. ECF No. 1, Compl. ¶ 32. Plaintiff asserts that the e-mail addressed the same concerns that Plaintiff had raised to Defendants Nelsen and Larsen during the meeting in which they placed her on the PIP. ECF No. 1, Compl. ¶ 32.

On February 10, 2015, Defendant Nelsen allegedly observed Plaintiff walking with a limp and inquired as to whether Plaintiff was okay. Plaintiff states that she told Defendant Nelsen, "Yea, I've been sitting too long, and I've got bad knees." ECF No. 1, Compl. ¶ 35.

Plaintiff alleges that her performance measurably improved after being placed on the PIP, increasing by 16% within a week. ECF No. 1, Compl. ¶ 38. On February 18, 2015, Defendant Nelsen met with Plaintiff and confirmed that Plaintiff was employing proper billing methods and procedures. ECF No. 1, Compl. ¶ 39. On February 19, 2015, an HRG trainer revised Plaintiff's most-recent evaluation by adding points to her score to accord with Plaintiff's conversation with Defendant Nelsen the day before. ECF No. 1, Compl. ¶ 40.

Nevertheless, Plaintiff remained concerned about the criteria by which HRG assessed her performance. Plaintiff raised her concerns over the performance criteria on February 19, 2015, verbally informing Defendant Nelsen that she was confused by the seemingly-contradictory scoring criteria and training she had received. ECF

No. 1, Compl. ¶ 41. Plaintiff expressed concerns about the qualifications of the HRG trainer conducting her performance evaluations. ECF No. 1, Compl. ¶ 41.

On February 20, 2015, Defendants Nelsen and Larsen terminated Plaintiff's employment. ECF No. 1, Compl. ¶ 42. Plaintiff alleges that Defendant Larsen asked her for a list of "training concerns." When Plaintiff stated that she had not prepared a list of training concerns, Defendant Larsen stated that collection reports showed that Plaintiff was "not making enough money for the clients." Plaintiff allegedly responded that she had been working on her new account for less than four weeks, that her account billings were "beginning to generate income not yet reflected in reports reviewed by Defendant Larsen," and that she had "found $2,000 billed and paid worker's compensation claims previously incorrectly recorded as unpaid." ECF No. 1, Compl. ¶ 42. Defendant Larsen told Plaintiff, "It's not working out," and terminated Plaintiff's employment, effective immediately. ECF No. 1, Compl. ¶ 42.

Plaintiff alleges that Defendant Larsen presented her with a pre-printed notice of termination listing "issues of concern," including that Plaintiff failed to provide a list of training needs within one week as outlined in the PIP meeting. ECF No. 1, Compl. ¶ 44. Plaintiff contends that she was never instructed to provide Defendants Nelsen or Larsen with a list of training needs. ECF No. 1, Compl. ¶ 45. She further alleges that when she reviewed her PIP after her termination, "someone other than [Plaintiff] later wrote in feminine handwriting on the last page of the printed PIP below [Plaintiff's] signature, 'Toni to provide list of training items to Candice.' Next to the feminine handwriting on the printed PIP was the handwritten initials 'T.R.'" ECF No. 1, Compl. ¶ 46.

The pre-printed notice of termination listed as a second "issue of concern" that "[Plaintiff's] overall QA score had not improved to an acceptable score." ECF No. 1, Compl. ¶ 44. However, Plaintiff alleges that Defendants Nelsen and Larsen "did not have, and did not review," her most recent scores based on her performance over the two weeks preceding her termination. ECF No. 1, Compl. ¶ 47.

Plaintiff filed this complaint alleging five causes of action against Defendants HRG, Larsen, and Nelsen: (1) discriminatory discharge in violation of the Americans with Disabilities Act and the Washington Law Against Discrimination; (2) wrongful discharge in violation of public policy RCW 74.29 and the Rehabilitation Act of 1973; (3) outrage, or intentional infliction of emotional distress; (4) negligent infliction of emotional distress; and (5) negligent supervision. ECF No. 1. Defendants move to dismiss Plaintiff's complaint for failing to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 7.

## DISCUSSION

### A. Standard

The Federal Rules of Civil Procedure allow for the dismissal of a complaint where the plaintiff fails to state a claim upon which relief may be granted. Fed. R.Civ.P. 12(b)(6). A motion to dismiss brought pursuant to this rule "tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). In reviewing the sufficiency of a complaint, a court accepts all well-pleaded allegations as true and construes those allegations in the light most favorable to the non-moving party. *Daniels–Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir.2010) (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031–32 (9th Cir.2008)).

To withstand dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While specific legal theories need not be pleaded, the pleadings must put the opposing party on notice of the claim. *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir.2001) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A plaintiff is not required to establish a probability of success on the merits; however, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

## B. Discriminatory Discharge

 In her first cause of action, Plaintiff claims that Defendants terminated her employment because they perceived her as being disabled, despite Plaintiff being qualified to perform the essential functions of the job. ECF No. 1, Compl. ¶¶ 50–58. Plaintiff contends that such intentional discrimination violates the Americans with Disabilities Act ("ADA") and the Washington Law Against Discrimination ("WLAD"). ECF No. 1, Compl. ¶¶ 50–58.

The ADA prohibits discrimination against qualified individuals with disabilities. ADA, 42 U.S.C. § 12112(a). The ADA defines disability as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." § 12102(1). Pursuant to the ADA Amendments Act ("ADAAA"), the definition of disability

shall be construed "in favor of broad coverage of individuals." § 12102(4)(A).

An individual shall be "regarded as" having a disability "if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major activity." § 12102(3)(A). According to the post-ADAAA regulations promulgated by the Equal Employment Opportunity Commission, the " 'regarded as' prong of the definition of disability … does not require a showing of an impairment that substantially limits a major life activity or a record of such an impairment." 29 C.F.R. § 1630.2(g)(3). However, a "regarded as" claim may not be based on impairments that are "transitory and minor." § 12102(3)(B). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." § 12102(3)(B).

 A plaintiff asserting disparate treatment under the ADA and the WLAD may prove her claim in two ways. First, a plaintiff may produce direct or circumstantial evidence that a discriminatory reason more likely than not motivated the employer. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination."); *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir.2008) (identifying an alternative case theory for disability discrimination claims supported by direct or circumstantial evidence); *Hill v. BCTI Income Fund–I*, 144 Wash.2d 172, 179–80, 23 P.3d 440 (2001) *overruled on other grounds by McClarty v. Totem Elec.*, 157 Wash.2d 214, 137 P.3d 844 (2006) (noting that, where the plaintiff lacks direct evidence of discriminatory animus, Wash-

ington courts generally apply the *McDonnell Douglas* framework to claims brought pursuant to WLAD). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Metoyer v. Chassman,* 504 F.3d 919, 931 (9th Cir.2007).

■ Second, a plaintiff may make a prima facie case under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Thurston,* 469 U.S. at 121, 105 S.Ct. 613; *Surrell,* 518 F.3d at 1105; *Hill,* 144 Wash.2d at 179–80, 23 P.3d 440. Under the *McDonnell Douglas* framework, a plaintiff must show that (1) she is a member of a protected class; (2) she performed according to her employer's expectations; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside of the plaintiff's protected class were treated more favorably. *Nicholson v. Hyannis Air Serv., Inc.,* 580 F.3d 1116, 1123 (9th Cir.2009). Once the plaintiff succeeds in presenting a prima facie case, the burden shifts to the defendant "to articulate a 'legitimate, nondiscriminatory reason' for its employment decision." *Noyes v. Kelly Servs.,* 488 F.3d 1163, 1168 (9th Cir.2007). The plaintiff may then present evidence demonstrating that "defendant's proffered reason was pretext for unlawful discrimination." *Id.*

■ Plaintiff has not identified whether she intends to establish her case through direct and circumstantial evidence of discriminatory motivation, or under the *McDonnell Douglas* framework. The issue is not determinative here, however, because under either approach Plaintiff's complaint contains sufficient factual allegations to state a claim that is plausible on its face. "[A]n employment discrimination plaintiff need not plead a prima facie case

of discrimination" in her complaint. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). The Supreme Court upheld this rule in *Twombly,* 550 U.S. at 569–70, 127 S.Ct. 1955.

Defendants argue that Plaintiff's claim fails to meet *Twombly*'s pleading standards because Plaintiff does not identify from what specific disability she alleges Defendants perceived her to suffer, whether the alleged disability is substantially limiting, or how Defendants perceived Plaintiff as having this disability. ECF No. 7 at 7–11; *see Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. However, the post–2008 ADA is clear that Plaintiff need not demonstrate that her alleged disability is substantially limiting. *See* § 12102(3)(A). Additionally, although Plaintiff must show that she suffers from a disability, the Court is not aware of any law requiring a plaintiff who suffers from more than one disability to prove which disability her employer regarded her as having, as long as any disability on which plaintiff relies is not transitory and minor. *See* § 12102(3)(B). Finally, Plaintiff need not present direct evidence that her employer perceived her to be suffering from a disability. Circumstantial evidence is sufficient to show a discriminatory motive under the first approach, and evidence of disparate treatment is sufficient to establish a prima facie case of discrimination under the *McDonnell Douglas* framework.

Plaintiff's complaint must only contain sufficient facts to state a claim to relief that is plausible on its face; she need not establish a prima facie case in the complaint. *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955; *Swierkiewicz,* 534 U.S. at 515, 122 S.Ct. 992. Plaintiff's complaint easily meets this standard. Plaintiff identifies several disabilities from which she suffers. ECF No. 1, Compl. ¶ 14. She establishes

a dispute of fact as to whether she was qualified for the position, alleging that she was trained insufficiently but that her performance nevertheless was improving measurably at the time of her termination. ECF No. 1, Compl. ¶¶ 16, 19, 20, 21, 22, 38, 39, 40. Plaintiff alleges that Defendants became aware of her disability because she informed them that she had obtained services from DVR, Defendant Nelsen observed Plaintiff limping, and Plaintiff stated that she had bad knees. ECF No. 1, Compl. ¶¶ 23, 25, 35. She states that Defendants terminated her employment without good cause, and she raises a plausible claim that her termination was based on Defendants' knowledge of her disability. ECF No. 1, Compl. ¶¶ 50–58. Plaintiff's complaint sufficiently states a claim to relief that is plausible on its face. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's first cause of action for discriminatory discharge.

## C. Wrongful Discharge in Violation of Public Policy

■ In her second cause of action, Plaintiff claims that her termination violated public policy set forth in Revised Code of Washington 74.29, WAC 388–891, and the Rehabilitation Act of 1973, 29 U.S.C. § 701. ECF No. 1, Compl. ¶¶ 59–62. Plaintiff claims that her discharge violated the public policies set forth in these statutes because she was terminated for having participated in vocational rehabilitation and job support services provided by Washington's vocational rehabilitation program, DVR. ECF No. 1, Compl. ¶ 61.

The purpose of The Rehabilitation Act of 1973 is "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society through ... statewide workforce development systems ... [and] programs of vocational rehabilitation." 29 U.S.C. § 701(b)(1). The Rehabilitation Act au-

thorizes federal grants to states to assist in meeting the costs of vocational rehabilitation services. 29 U.S.C. § 720(b)(1).

RCW 74.29 mandates that Washington accept federal grant money in order to, among other things, "rehabilitate individuals with disabilities who have a barrier to employment so that they may prepare for and engage in a gainful occupation." RCW 74.29.005; RCW 74.29.050. WAC 388–891 governs the vocational rehabilitation services provided in Washington, and notes that vocational rehabilitation services are "offered to assist individuals with disabilities to prepare for, get, and keep jobs that are consistent with their strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice." WAC 388–891–0005. WAC 388–891 specifically states that it is "consistent" with the Rehabilitation Act of 1973. WAC 388–891–0005.

■ To prevail on a wrongful discharge claim in Washington, a plaintiff must show four factors: (1) "the existence of a clear public policy"; (2) "that discouraging the conduct in which [she] engaged would jeopardize the public policy"; (3) "that the public-policy-linked conduct caused the dismissal"; and (4) "that the defendant has not offered an overriding justification for the dismissal." *Cudney v. ALSCO, Inc.*, 172 Wash.2d 524, 529, 259 P.3d 244 (2011) (en banc) (quoting *Gardner v. Loomis Armored, Inc.*, 128 Wash.2d 931, 941, 913 P.2d 377 (1996)).

■ The second element, the jeopardy element, asks "whether current laws and regulations provide an adequate means of promoting the public policies" underlying the cited statutes. *Id.* at 530, 259 P.3d 244. The plaintiff must show that "other means of promoting the public policy are inadequate, and that the actions the plaintiff took were the only available adequate means to promote the public policy." *Id.*

(citing *Hubbard v. Spokane Cnty.*, 146 Wash.2d 699, 713, 50 P.3d 602 (2002) and *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wash.2d 200, 208, 193 P.3d 128 (2008)).

Defendants argue that Plaintiff's public policy claim must be dismissed because Plaintiff is "adequately protected by the existing statutory remedies contained in WLAD and ADA...." ECF No. 7 at 12. Plaintiff argues that the public policies set forth in The Rehabilitation Act of 1973, RCW 74.29, and WAC 388–891 are different in kind than the public policies protected by WLAD and ADA, and that there is no statutory remedy for a plaintiff who is terminated because she used DVR services, rather than because she is disabled or regarded as disabled. ECF No. 9 at 16. Defendants argue that Plaintiff's wrongful discharge claim cannot be separated from her disability because she was an at-will employee and therefore could have been fired for using DVR services without violating WLAD or ADA. ECF No. 10.

Defendants' arguments miss the mark. The Rehabilitation Act and RCW 388–891 both establish a clear public policy favoring vocational rehabilitation services for disabled individuals to enable them to participate successfully in the workforce. RCW 74.29; 29 U.S.C. § 701. An employer who terminates an employee upon learning that employee utilized DVR's services may be violating that public policy, even if the employee otherwise is an at-will employee.

Plaintiff's second cause of action alleges that Defendants terminated her employment because she utilized DVR services. In other words, Plaintiff's argument is that when presented with two similarly qualified individuals with the same disability, Defendants terminated the individual who used DVR but not the individual who did not use DVR, out of animus toward the use of vocational rehabilitation services, not because the individual is disabled. If De-fendants' motivation for termination was Plaintiff's disability, then Plaintiff has an adequate legal remedy in ADA and WLAC. However, if Defendants' motivation for terminating Plaintiff was her use of vocational rehabilitation, Plaintiff has no adequate legal remedy to redress that harm apart from a claim for wrongful discharge in violation of public policy.

Plaintiff has met the minimum standard on a motion to dismiss to plead sufficient facts to state a plausible claim for relief. She has identified a clear public policy: a federal and state policy favoring the availability and utilization of vocational rehabilitation services for and by individuals with disabilities. RCW 74.29; 29 U.S.C. § 701. If Plaintiff proves that Defendants terminated her employment because she used vocational rehabilitation, rather than because she had a disability or was regarded as having a disability, then Plaintiff would have no other adequate legal remedy besides wrongful discharge in violation of public policy. In addition, allowing employers to terminate employees based on the employees' having used rehabilitation services would jeopardize the public policy set forth in the Rehabilitation Act and RCW 74.29.

Plaintiff alleges that she was placed on the PIP just two days after she informed Defendants that she had been a DVR client, after showing improved performance and despite having received little training. This circumstantial evidence is sufficient at this stage of the pleadings to establish a plausible claim that Defendants terminated Plaintiff's employment because she utilized DVR services. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's second cause of action for wrongful discharge in violation of public policy.

## D. Outrage

In her complaint, Plaintiff contends that Defendants' conduct was "scurrilous, abusive, [ ] intimidating," and "so outrageous in character as to be absolutely intolerable in a civilized society." ECF No. 1, Compl. ¶¶ 63–66. She claims that Defendants breached a duty of care that they owed to her, and thus that they committed the tort of outrage. ECF No. 1, Compl. ¶ 65. Defendants argue in their motion to dismiss that Plaintiff fails to identify what conduct she deems extreme and outrageous. ECF No. 7 at 15. In response, Plaintiff argues that by allegedly forging her initials at the bottom of the PIP form and then using that form as support justifying her termination, Defendants committed extreme and outrageous conduct. ECF No. 9 at 18.

To succeed on a claim for the tort of outrage, a plaintiff must show: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." *Snyder v. Medical Serv. Corp. of Eastern Wa.,* 145 Wash.2d 233, 242, 35 P.3d 1158 (2001) (en banc) (*"Snyder II"*) (quoting *Birklid v. Boeing Co.,* 127 Wash.2d 853, 867, 904 P.2d 278 (1995) (en banc)) (internal quotation marks omitted). The purported conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable to a civilized community." *Birklid,* 127 Wash.2d at 867, 904 P.2d 278 (quoting *Grimsby v. Samson,* 85 Wash.2d 52, 59, 530 P.2d 291 (1975)). Although "the question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, [ ] it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Dicomes v. State,* 113 Wash.2d 612, 630, 782 P.2d 1002 (1989) (en banc) (citing *Phillips v. Hardwick,* 29 Wash.App. 382, 387, 628 P.2d 506 (Wash.Ct.App.1981)).

The fact of a discharge alone is not sufficient to constitute outrage. *Id.* (citing *Evrard v. Jacobson,* 117 Wis.2d 69, 342 N.W.2d 788 (Ct.App.1983)). "It is the manner in which a discharge is accomplished that might constitute outrageous conduct." *Id.* Additionally, "mere insults and indignities, such as causing embarrassment or humiliation" are insufficient to support a claim of outrage. *Id.*

In *Dicomes,* the plaintiff alleged that her employer intentionally prepared a false report identifying incidents of mismanagement, and then used it to fire her. *Dicomes,* 113 Wash.2d at 616, 630–31, 782 P.2d 1002. The Washington Supreme Court noted that the plaintiff had been discharged privately although her employer had responded briefly to media inquiries regarding her termination. *Id.* at 630, 782 P.2d 1002. The court held that the defendant's conduct in discharging the plaintiff did not rise to the level required by a claim of outrage, even if the mismanagement report was pretext intended to create a false basis for terminating the plaintiff. *Id.* The court noted that, even if defendant's conduct constituted malice, malicious conduct is insufficient to constitute extreme and outrageous conduct supporting a claim of outrage. *Id.* at 631, 782 P.2d 1002 (citing Restatement (Second) of Torts § 46, comment d (1965) (summarizing the prevailing view among courts that the tort of outrage cannot be supported by evidence that "the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.")).

Viewing the facts in the light most favorable to the non-moving party, the Court presumes for purposes of this order that Defendants Nelsen or Larsen forged Plaintiff's initials at the bottom of the PIP. However, Plaintiff does not allege that she was discharged in public or in an egregious or humiliating manner. Even assuming, in arguendo, that Defendants falsified Plaintiff's initials with intent to create a false basis for discharging her, under *Dicomes,* such conduct is insufficient as a matter of law to rise to the level of being "atrocious, and utterly intolerable to a civilized community." *Id.* at 630–31, 782 P.2d 1002. Therefore, the Court grants Defendants' motion to dismiss with prejudice Plaintiff's third cause of action for outrage.

### E. Negligent Infliction of Emotional Distress

In her fourth cause of action, Plaintiff claims that "Defendants' conduct in failing to take prompt, adequate action to protect [her] health and well-being at work" constitutes the tort of negligent infliction of emotional distress. ECF No. 1, Compl. ¶¶ 67–70. She contends that Defendants owed her a duty of care that they breached. ECF No. 1, Compl. ¶ 69.

To succeed on a claim of negligent infliction of emotional distress against one's employer, a plaintiff must show: "(1) that her employer's negligent acts injured her, (2) the acts were not a workplace dispute or employee discipline, (3) the injury is not covered by the Industrial Insurance Act, and (4) the dominant feature of the negligence claim was the emotional injury." *Snyder v. Medical Serv. Corp. of Eastern Wa.,* 98 Wash.App. 315, 323, 988 P.2d 1023 (Wash.Ct.App.1999) (*"Snyder I"*) *affirmed by Snyder II,* 145 Wash.2d 233, 35 P.3d 1158. Additionally, Plaintiff must make out a prima facie case showing duty, breach, proximate cause, and injury.

*Snyder II,* 145 Wash.2d at 243, 35 P.3d 1158.

Whether a defendant owed a duty to the plaintiff is a question of law. *Id.* "The general rule in Washington is an employer has the right to discharge an employee, with or without case, in the absence of a contract for a specified period of time." *Id.* at 238, 35 P.3d 1158. In Washington, "employers do not owe employees a duty to use reasonable care to avoid the inadvertent infliction of emotional distress when responding to workplace disputes." *Bishop v. State,* 77 Wash.App. 228, 234, 889 P.2d 959 (1995). An employer's obligation "to refrain from particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous." *Id.* at 244, 889 P.2d 959. "Conduct is unreasonably dangerous when its risks outweigh its utility." *Id.*

Plaintiff does not argue that her discharge constituted negligence, but rather that the alleged falsification of her initials on the PIP constituted negligence that breached a duty of care owed to her. ECF No. 9 at 18–19. This theory of negligence is not clearly described in the complaint. *See* ECF No. 1, Compl. ¶¶ 67–70. However, all of the facts necessary to state a plausible claim to relief are included within the complaint and incorporated into the fourth cause of action for negligent infliction of emotional distress. ECF No. 1, Compl. ¶ 67.

Defendants' alleged forgery of Plaintiff's initials, although used later to support Plaintiff's discharge, arguably constituted a separate event that occurred more than two weeks prior to Plaintiff's termination. It arguably was unreasonably dangerous in that it could have formed a false basis for Plaintiff's termination or discipline.

However, because Plaintiff was an at-will employee, there is no identifiable duty which Defendants breached.

Defendants could have discharged Plaintiff with or without her initials on the PIP, and with or without cause, regardless of the alleged forgery. Therefore, Defendants' conduct was not likely to cause an unreasonably dangerous outcome that Defendants had a legal duty to avoid, and thus, Defendants' conduct was not foreseeably dangerous.

Employers only owe a duty to refrain from conduct that is foreseeably and unreasonably dangerous. Plaintiff's complaint fails to allege sufficient facts showing that her emotional injury was foreseeable, and any unreasonable danger based on Plaintiff's potential termination is danger that Defendants had no legal duty to avoid. Therefore, the Court grants Defendants' motion to dismiss with prejudice Plaintiff's fourth cause of action for negligent infliction of emotional distress.

## F. Negligent Supervision / Retention

 In her fifth cause of action, Plaintiff claims that Defendant HRG negligently supervised and retained Defendants Nelsen and Larsen, subjecting her to "abusive and hostile conduct." ECF No. 1, Compl. ¶¶ 71–74. Plaintiff contends that Defendant HRG breached a duty of care that it owed to Plaintiff. ECF No. 1, Compl. ¶ 73.

 In Washington, the law distinguishes between vicarious liability and liability for negligent supervision or retention. *Niece v. Elmview Group Home*, 131 Wash.2d 39, 48–52, 929 P.2d 420 (1997) (en banc) (citing Restatement (Second) of Torts § 317 (1965) (commenting that § 317, Duty of Master to Control Conduct of Servant, is only applicable "when the servant is acting outside the scope of his employment. If the servant is acting with-

in the scope of his employment, the master may be vicariously liable under the principles of the law of Agency.")). When an employee is acting within the scope of her employment, an employer may be vicariously liable for that conduct under the doctrine of respondeat superior. *Niece*, 131 Wash.2d at 48, 929 P.2d 420 (1997).

 However, "[w]here the employee steps aside from the employer's purposes in order to pursue a personal objective of the employee, the employer is not vicariously liable." *Id.* When an employee acts outside the scope of her employment, the employer may still be liable under the narrower tort theory of negligent supervision or retention. "Liability under these theories is analytically distinct and separate from vicarious liability." *Id.* The theory of negligent supervision creates a "limited duty to control an employee for the protection of third parties, *even where* the employee is acting outside the scope of employment." *Id.* at 51, 929 P.2d 420 (emphasis added).

Plaintiff pleaded a claim of negligent supervision and retention, yet simultaneously pleaded that Defendants Larsen and Nelsen, at all times therein, acted within the scope of their capacities as employees of Defendant HRG. ECF No. 1, Compl. ¶¶ 3, 4. The tort of negligent supervision or retention is not a cognizable claim when an employee acts within the scope of her employment.

Additionally, Plaintiff fails to identify what specific duty Defendants allegedly breached. Because Plaintiff was an at-will employee, Defendants did not have a duty to establish a good cause basis for termination prior to terminating Plaintiff. Even assuming that Defendants did forge Plaintiff's initials, Defendants rightfully could fire her without cause at all or based on a false reason.

Therefore, the Court grants Defendants' motion to dismiss with prejudice Plaintiff's

fifth cause of action for negligent supervision / retention in part.

Accordingly, **IT IS HEREBY OR-DERED:**

1. Defendants' Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6), ECF No. 7, is **GRANTED in part** and **DENIED in part.**

2. Defendant's Motion to Dismiss is **denied** as to Plaintiff's **first cause of action** for discriminatory discharge and **second cause of action** for wrongful discharge in violation of public policy.

3. Plaintiff's **third cause of action** for outrage, **fourth cause of action** for negligent infliction of emotional distress, and **fifth cause of action** for negligent supervision are **DISMISSED with prejudice.**

The District Court Clerk is directed to enter this Order and provide copies to counsel.