Filed 10/5/21  Boonsalat v. City of Stockton CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| SOMPORN BOONSALAT, | C090582 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CV-UCR-2017-0013497) |
| v. | |
| CITY OF STOCKTON, | |
| Defendant and Respondent. | |

Plaintiff Somporn Boonsalat appeals from an order sustaining a demurrer and dismissing his claims against his employer, defendant City of Stockton (City), for discrimination and retaliation in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.).[1]  We will reverse and remand to the trial court for further proceedings.

---

[1]  Further undesignated statutory references are to the Government Code.

1

# FACTUAL AND PROCEDURAL BACKGROUND

On December 15, 2017, Boonsalat filed a complaint against the City alleging claims for race/national origin discrimination, reverse religious discrimination, and retaliation. The City demurred to the complaint. Boonsalat responded with a first amended complaint alleging the same claims. The City demurred to the first amended complaint asserting that Boonsalat should not be granted leave to amend. Boonsalat filed an opposition and the City replied. The trial court sustained the demurrer with leave to amend.

Boonsalat filed a second amended complaint alleging the same claims under FEHA. The City again demurred, Boonsalat opposed, and the City replied. The trial court sustained the demurrer with leave to amend.

On January 24, 2019, Boonsalat filed the third amended complaint, the pleading at issue on appeal, again alleging FEHA-based claims for discrimination and retaliation.

The third amended complaint alleged that Boonsalat is an Asian-American who was employed as an associate civil engineer in the City's municipal utility department. Boonsalat is member of the Khmu ethnic minority from Laos and practices a religion described as "Laotian Folk Religion." Boonsalat alleged that high-level City officials of the Mormon faith sought to recruit, hire, and promote Mormons over non-Mormons.

In January 2015, Boonsalat applied for a promotion to senior civil engineer. Boonsalat was highly qualified for the position based on his experience, including seven years' delivering water and wastewater projects, two years' operating the municipal utility department's wastewater treatment plant, a wastewater treatment operator certificate, master's degree coursework in water resources and water quality management, five years' working on the delta water supply project, and performing satisfactory work as a senior civil engineer during a position vacancy and as principal civil engineer during the principal engineer's approximate one-month per year absence.

2

Boonsalat met the minimum qualifications for the senior civil engineer position. Boonsalat was ranked number one on the list of internal and external candidates for the position. The individuals on the internal interview panel for the position had all supervised Boonsalat and deemed his work as meeting or exceeding expectations.

On or about June 22, 2015, Boonsalat received notice that his request for promotion was denied. The promotion was offered to a White Mormon who ranked sixth over non-Mormon individuals ranked in the top five, in violation of the City's certification and appointing rules. When the White Mormon offeree declined the offer, Boonsalat was not notified and a " 'secret' " offer was made to a White, non-Mormon candidate, who also declined the offer. Again, Boonsalat was not notified that the position remained unfilled. The position sat vacant as the City continued to seek applicants with Boonsalat's qualifications. While the position was vacant, Boonsalat served as senior engineer for one year.

In September 2015, when Boonsalat contacted the human resources department regarding his belief that he was denied the promotion because he was not Mormon and not White, he was advised by the municipal utilities department director, a Mormon, and two others, both White and one a Mormon, that he was not qualified and not ready to hold the senior civil engineer position. However, Boonsalat was asked to "re-interview" for the position, which he initially agreed, but ultimately declined, to do based on circumstances that led him to believe he would not be given fair and unbiased consideration. On October 28, 2015, a less qualified person than Boonsalat was selected for the position.

On September 13, 2016, Boonsalat filed a complaint with the Department of Fair Employment and Housing (DFEH). Boonsalat alleged that afterwards the City retaliated by: (1) writing him up when he was late to work after the start time was moved to 7:30 a.m., even though other employees were given flexibility to arrive between 7:30 a.m. to 8:30 a.m.; (2) hiring a consultant for a position for which Boonsalat was qualified;

3

(3) refusing to allow Boonsalat to have a flexible schedule or use vacation time to attend master's degree classes in water engineering at California State University, Sacramento; (4) taking steps to avoid promoting him when he applied for a senior civil engineer position in the public works department; (5) rejecting his application for the City's leadership academy; and (6) on July 31, 2018, terminating him.

The City demurred to the third amended complaint, Boonsalat opposed the demurrer, and the City replied. On July 24, 2019, the trial court issued a tentative ruling sustaining the demurrer without leave to amend.[2] On July 26, 2019, the court conducted a hearing on the demurrer and ruled that the demurrer would be sustained without leave to amend. On September 20, 2019, the court issued an order sustaining the demurrer to the third amended complaint without leave to amend and dismissing this case.[3]

The court applied *Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317 (*Guz*), to determine whether plaintiff adequately pled a FEHA claim for race and religious discrimination, which required a showing that: "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Guz,* at p. 355; § 12940, subd. (a).)

The trial court concluded that Boonsalat adequately pled the first and third elements of the *Guz* test and had cured the deficiencies in prior pleadings regarding the second element. However, as to the fourth element, the court determined that allegations

---

[2] The court also denied the City's request for judicial notice of five documents as "irrelevant to the present motion."

[3] The record on appeal does not include a transcript of oral proceedings. Boonsalat did not request a hearing on the court's tentative rulings on the demurrers to the first and second amended complaints and the clerk of the superior court declared that no reporter was present for the hearing on the demurrer to the third amended complaint.

that the City sought to fill the senior civil engineer with White Mormons were insufficient to show he was not promoted because he is Asian and not Mormon, observing that Boonsalat did not allege that anyone involved in the promotion knew of his religion. Other allegations of discriminatory treatment (e.g., the " 're-interview' ") failed to state an adverse employment action or plead sufficient facts of a discriminatory motive.

With the exception of his termination, the court concluded that Boonsalat's retaliation claim failed to plead sufficient facts of an adverse employment action under *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*) ("in order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action"). As to his termination, Boonsalat's pleading was insufficient in that he did not state who at the City knew of his complaints to human resources or DFEH, who made the decision to terminate him, or explain why three years had passed from his complaint to human resources to his termination.

Lastly, the trial court determined that Boonsalat would not be given further leave to amend, applying Code of Civil Procedure section 430.41, subdivision (e)(1), that a complaint "shall not be amended more than three times, absent an offer to the trial court as to such additional facts to be pleaded that there is a reasonable possibility the defect can be cured to state a cause of action." The court concluded Boonsalat's opposition to the demurrer to his third amended complaint offered no additional facts he could plead to show a reasonable possibility that the defects in his complaint could be cured.

5

On October 1, 2019, the City filed a notice of entry of order and dismissal of action.[4]  On October 9, Boonsalat appealed.

## DISCUSSION

### *Standard of Review*

"A demurrer tests the legal sufficiency of the challenged pleading.  [Citation.]  We review de novo a trial court's ruling on a demurrer.  [Citation.]  We accept as true all material facts properly pleaded in the complaint, but do not assume the truth of contentions, deductions, or conclusions of fact and law.  [Citations.]  The question of a plaintiff's ability to prove the allegations, or the possible difficulty in making such proof, does not concern the reviewing court and plaintiffs need only plead facts showing that they may be entitled to some relief.  [Citation.]"  (*Brown v. Los Angeles Unified School Dist.* (2021) 60 Cal.App.5th 1092, 1103 (*Brown*).)

" ' "We affirm if any ground offered in support of the demurrer was well taken but find error if the plaintiff has stated a cause of action under any possible legal theory.  [Citations.]  We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale." ' [Citation.]"  (*The Inland Oversight Committee v. City of San Bernardino* (2018) 27 Cal.App.5th 771, 779.)

"In addition, ' "[w]hen a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' " ' [Citation.]"  (*Brown, supra,* 60 Cal.App.5th at p. 1103.)

---

[4]  " '[A]n order of dismissal is to be treated as a judgment for the purposes of taking an appeal when it finally disposes of the particular action and prevents further proceedings as effectually as would any formal judgment.'  [Citations.]"  (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699.)

Lastly, because Boonsalat's claims are based on FEHA, a statutory scheme, he must specially plead all allegations of material fact. (*Fisher v. San Pedro Peninsula Hosp.* (1989) 214 Cal.App.3d 590, 604 [in a FEHA case, "facts in support of each of the requirements of a statute upon which a cause of action is based must be specifically pled"]; *Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795 [" 'to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity' "].)

*Race and National Origin Discrimination*

On appeal, Boonsalat alleges that he adequately pled all the elements of a prima facie claim of race and national origin under *Guz*, including the fourth element. The City does not dispute that Boonsalat pled sufficient facts on the first, second, and third elements. We agree that Boonsalat pled specific facts that he was a member of a protected class, qualified for the promotion he sought, and suffered an adverse employment action when he was denied the promotion. (*Guz, supra,* 24 Cal.4th at p. 355.) Accordingly, the issue on appeal is whether the third amended complaint sufficiently alleged the fourth element of a prima facie claim of discrimination under FEHA.

The test articulated in *Guz* is derived from *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668] (*McDonnell Douglas*). (*Guz, supra,* 24 Cal.4th at p. 354.) As the court in *Guz* explained, "[b]ecause of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes. [Citations.]" (*Ibid.*) The court continued, the *McDonnell Douglas* test "reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially." (*Guz,* at p. 354.) The test "places on the plaintiff the initial burden to establish a prima facie case of discrimination. This step is designed to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or

7

was clearly unqualified, or where the job he sought was withdrawn and never filled. [Citations.]" (*Id.* at pp. 354-355.)  "While the plaintiff's prima facie burden is 'not onerous' [citation], he must at least show ' "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion . . . .' [Citation.]" [Citation.]' " (*Id.* at p. 355.)

A complaint alleging discrimination in violation of FEHA that fails to state a prima facie case under the *Guz/McDonnell Douglas* test is subject to demurrer. (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 202, fn. 7.)

As stated above, the fourth element of the *McDonnell Douglas/Guz* test is "some other circumstance [that] suggests discriminatory motive." (*Guz, supra,* 24 Cal.4th at p. 355, citing, inter alia, *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 253 [67 L.Ed.2d 207] (*Burdine*) [to establish a prima facie case, the plaintiff must prove "that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination" (fn. omitted)].)  In *McDonnell Douglas*, the court identified one such circumstance as a showing, or in this case, factual allegations, "that, after [plaintiff's] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."[5]  (*McDonnell Douglas, supra,* 411 U.S. at p. 802, fn. omitted; *Burdine,* at p. 253, fn. 6; *Guz,* at p. 355, fn. 21 ["For example, in the seminal case of *McDonnell Douglas*, the court found that one rejected for a job opening could establish a prima facie case of race discrimination by showing . . . (4) the position

---

[5]  The *McDonnell Douglas* court noted "[t]he facts necessarily will vary in Title VII cases, and the specification [in this case] of the prima facie proof required from [the plaintiff] is not necessarily applicable in every respect to differing factual situations." (*McDonnell Douglas, supra*, 411 U.S. at p. 802, fn. 13.)

thereafter remained open and the employer continued to seek applications from persons with similar qualifications"]; *Abed v. Western Dental Services, Inc.* (2018) 23 Cal.App.5th 726, 736 [prima facie case of employment discrimination must include evidence of " 'some other circumstance [that] suggests discriminatory motive,' such as that the position remained open and the employer continued to solicit applications for it"]; see also *Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 663; *Sada v. Robert F. Kennedy Med. Ctr.* (1997) 56 Cal.App.4th 138, 149.)

"The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. [Citation.] . . . [T]he prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.' Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." (*Burdine, supra,* 450 U.S. at pp. 253-254.)

In *Los Angeles County Dept. of Parks & Recreation v. Civil Service Com.* (1992) 8 Cal.App.4th 273, the court said the test was different in a case involving failure to promote. "*McDonnell Douglas* involved hiring rather than promoting. In a case involving a promotional opportunity, it was held the fourth element of the prima facie case can be satisfied by showing the position was filled by another." (*Id.* at p. 280, fn. 5, citing *Mohammed v. Callaway* (10th Cir. 1983) 698 F.2d 395, 398.)

Boonsalat's third amended complaint alleges sufficient facts to meet the fourth element of the *McDonnell Douglas/Guz* test for a prima facie claim of employment discrimination. The complaint alleges that, after Boonsalat received notice on June 22, 2015, that he was denied the promotion, "[t]he position thereafter sat vacant although the City continued to seek applicants of Plaintiff's qualifications," and "while the position sat vacant, Plaintiff actually served as the Senior Engineer for approximately one (1) year." Boonsalat further alleges that the promotion was first offered to a "white Mormon" who

9

was ranked on the candidate list below Boonsalat and then to a "white, non-Mormon candidate," both of whom declined the offer. Ultimately, on October 28, 2015, "a lesser qualified individual was selected for the Senior Civil Engineer position." Under the case authority cited above, allegations in the third amended complaint that Boonsalat was denied the promotion and (1) the position sat vacant while the City sought other qualified applicants and (2) was ultimately filled by someone else--indeed, either of these circumstances--was sufficient to allege the fourth element of a prima facie case of employment discrimination.

The City argues that Boonsalat's allegations that White Mormons sought to promote White Mormons or White non-Mormons constituted contentions, deductions, and conclusions that we need not consider. The City also points out that "[t]here is . . no allegation as to the race of the person who eventually took the position." To the extent the City suggests that Boonsalat cannot satisfy the fourth element of a prima facie case without an allegation that the person who obtained the promotion was not a member of a protected class, the court in *Heard v. Lockheed Missiles and Space Co.* (1996) 44 Cal.App.4th 1735, held that, as a part of prima facie case of employment discrimination, an African-American employee was not required to prove that similarly situated non-African-American employees received the employment terms and conditions that he sought, and it was error to so instruct the jury. (*Id.* at p. 1747.) The court noted that such a requirement was never part of the *McDonnell Douglas* or *Burdine* prima facie model. (*Heard,* at p. 1754.) Further, "[t]o state that a plaintiff may never establish a prima facie case if the plaintiff fails to produce evidence that similarly situated employees outside the protected class were promoted, restricts unfairly the circumstances from which discrimination may be inferred. [Citation.] Such a requirement also unfairly emphasizes one way of proving intentional discrimination instead of properly focusing upon the pivotal issue in disparate treatment cases--whether a *particular individual* was discriminated against and why." (*Id.* at pp. 1755-1756.)

10

In *Diaz v. American Telephone & Telegraph* (9th Cir. 1985) 752 F.2d 1356, the Ninth Circuit similarly held the district court erred in concluding that, in a failure to promote case, the plaintiff could not establish the fourth element of the prima facie test because a person of the same protected class as the plaintiff ultimately received the promotion. (*Id.* at pp. 1359-1362.) The court noted the " 'inference of discrimination' " in the *McDonnell Douglas* test "is not dependent upon an examination of who, if anyone, was promoted instead of the plaintiff." (*Diaz,* at p. 1359.) " 'It is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group.' [Citations.]" (*Id.* at p. 1360.) In *Diaz*, as here, the Mexican-American plaintiff had filled in temporarily in the position he sought but was never offered it on a permanent basis. (*Id.* at p. 1361.) The fact that the position was eventually filled by Mexican-American did not preclude plaintiff from meeting the elements of a prima facie case. (*Id.* at p. 1362; see also *Perry v. Woodward* (10th Cir. 1999) 199 F.3d 1126, 1135-1141 [district court erred as a matter of law in holding the Hispanic employee failed to make out a prima facie case of racial discrimination because she was replaced by a Hispanic woman].)

We conclude that the superior court erred sustaining the demurrer to Boonsalat's claim of employment discrimination based on race and national origin for failing to adequately allege the fourth element of a prima facie case of employment discrimination.

### Reverse Religious Discrimination

The particular form of religious discrimination Boonsalat claims is "reverse religious discrimination."

A California employment law treatise states: "Title VII claims may also be based on allegations that the employer discriminated against persons who did not share the *employer's* religious beliefs. The 'protected class' showing required in a traditional race or sex discrimination claim does not apply in such cases: 'it is the religious beliefs of the

11

employer, and the fact that [the employee] does not share them, that constitute the basis of the [religious discrimination] claim.' " (Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2020) ¶ 7:652, p. 7-171, quoting *Noyes v. Kelly Services* (9th Cir. 2007) 488 F.3d 1163, 1168-1169 (*Noyes*).)

Boonsalat relies exclusively on *Noyes* as authority for a claim of reverse religious discrimination. No reported California appellate case we are aware of has considered a claim of reverse religious discrimination. However, in *Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994 (*Hicks*), a reverse racial discrimination case involving a White plaintiff, the court observed that "no universally accepted statement of the standard for establishing a prima facie case exists," but, in a five-to-one split, federal circuit courts "requir[e] a showing of ' "additional background circumstances" ' to support the suspicion of discriminatory intent." (*Id.* at p. 1002, fn. 3.) The Tenth Circuit was one of these circuits. (*Ibid.*, citing *Reynolds v. School Dist. No. 1, Denver, Colo.* (10th Cir. 1995) 69 F.3d 1523, 1534.)

In fact, *Noyes* relied on a Tenth Circuit decision, *Shapolia v. Los Alamos National Laboratory* (10th Cir. 1993) 992 F.2d 1033, 1038 (*Shapolia*), as "instructive" that the " 'protected class' " showing required in a traditional race or sex discrimination case is inapplicable in a reverse religious discrimination case. (*Noyes, supra*, 488 F.3d at pp. 1168-1169.) In *Shapolia,* the Tenth Circuit held that "because the discrimination is targeted against non-Mormons, and non-Mormons constitute a majority of society," a modified *McDonnell* test for reverse discrimination cases applied. (*Shapolia,* at p. 1038.) "[I]n order to establish a prima facie case in actions where the plaintiff claims that he was discriminated against because he did not share certain religious beliefs held by his supervisors, we hold that the plaintiff must show (1) that he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory

12

motive based upon the employee's failure to hold or follow his or her employer's religious beliefs."[6] (*Ibid.*, fns. omitted.)

We conclude that Boonsalat has adequately alleged a prima facie claim for reverse religious discrimination, if only minimally. The third amended complaint alleges that high-level Mormons in city government recruit, hire, and promote other Mormons over more qualified non-Mormons, including in the municipal utility department. For example, Boonsalat alleges that former city manager, Bob Deis, a Mormon, hired former deputy city manager, Mike Locke, a Mormon, who hired municipal utility director, Mel Lytle, a Mormon, over more qualified non-Mormon candidates, and Lytle hired as municipal utility district engineering service manager, Lorin Gardner, a Mormon, over more qualified non-Mormon candidates, as well as a Mormon, William Staheli, to serve as chief financial officer of the municipal utility district. (Compare *Hicks, supra,* 160 Cal.App.4th at p. 1006 [plaintiff's evidence did not show a pattern of discrimination of hiring minorities to replace White news anchors where "[t]he five not retained included two White men, one White woman, one Asian-American woman, and one African-American man," and the employer hired "two African-American men, a Hispanic woman, an Asian-American woman, an Asian-American man, and a White woman"];

---

[6] The Ninth Circuit in *Noyes*, in discussing a prima facie case of reverse religious discrimination, noted that it had adapted the *McDonnell Douglas* test in a failure to promote context to require plaintiff to show " '(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably.' [Citation.]" (*Noyes, supra,* 488 F.3d at p. 1168.) Based on *Shapolia*, the court in *Noyes* concluded that the " 'protected class' " element was inapplicable. (*Noyes,* at p. 1168.) While the court did not clearly articulate an adapted prima facie test for reverse religious discrimination, Boonsalat assumes the Ninth Circuit simply eliminated the "protected class" element, leaving only the other three elements. However, such a test would not require a showing that an employee was treated less favorably because he or she did not share the employer's religion. Accordingly, to the extent *Noyes* does not require such a showing, we decline to follow it.

13

*Shapolia, supra*, 992 F.2d at p. 1039 ["On the facts of this case, we have significant doubts about whether the plaintiff has met his prima facie burden. The mere fact that one Mormon supervisor reviewed another Mormon supervisor's performance appraisal of a non-Mormon employee is not sufficient to raise an inference of discrimination." (Fn. omitted.)].)

To be sure, as the superior court pointed out, the third amended complaint identifies a number of high-level employees who are not described as Mormon. Further, Boonsalat relies primarily on his allegation that the senior civil engineer position was, at Lytle's request, first offered to a Mormon. The significance of this allegation, however, is diminished by the fact that Boonsalat's pleading also alleges that the position was then offered to a non-Mormon and ultimately filled by a person who is not alleged to be Mormon.

Nonetheless, we conclude that Boonsalat has sufficiently pled circumstances raising an inference that he was denied a promotion because he did not share in the Mormon faith.

### *Retaliation*

Boonsalat contends he has adequately pled all three elements of a prima facie case of retaliation under FEHA. (*Yanowitz, supra,* 36 Cal.4th at p. 1042; § 12940, subd. (h).) Again, the City does not dispute that Boonsalat has pled the first and second elements-- i.e., Boonsalat engaged in protected activity and the City subjected him to adverse employment action--assuming that the adverse action element is limited to his termination. The disputed issue is whether Boonsalat has sufficiently alleged the third element: a causal connection between Boonsalat's protected activity and the City's adverse employment action. We conclude that Boonsalat has adequately alleged all three elements of a prima facie case of retaliation under FEHA.

Boonsalat alleged that (1) on September 25, 2015, he requested a meeting with the City's human resources department to file a discrimination complaint and, per request, on

14

September 28, provided the topics he wished to discuss, including his belief that he was not selected for promotion based on religion and race; (2) on October 1, 2015, he filed a discrimination complaint with the human resources department; (3) on September 13, 2016, he filed a complaint with the DFEH; and (4) on December 15, 2017, the instant lawsuit. Any of these would constitute protected activity. (*Glynn v. Superior Court* (2019) 42 Cal.App.5th 47, 55 (*Glynn*) [e-mails to human resources]; *Choochagi v. Barracuda Networks Inc.* (2020) 60 Cal.App.5th 444, 459-460 [complaint to human resources]; *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 386 (*McRae*) [DFEH claims]; *McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 300 [lawsuit].)

The third amended complaint alleges that the City's adverse employment actions included denying Boonsalat promotion to senior civil engineer, writing him up for being late to work under a newly instituted start time, and termination of his employment. On appeal, Boonsalat contends the adverse employment actions he was subjected to included, "among other things, the denial of the promotional opportunity and [his] ultimate termination." Assuming that Boonsalat is not referring to the initial denial of promotion on June 22, 2015, which preceded any protected activity, both failure to promote (i.e., by filling the position with another on Oct. 28, 2015) and termination (on July 31, 2018) plainly constituted adverse employment action. (See *Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1380 ["an adverse employment action is not limited to 'ultimate' employment acts, such as hiring, firing, demotion or failure to promote, but also includes the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for career advancement"]; see also *Meeks v. AutoZone, Inc.* (2018) 24 Cal.App.5th 855, 879 (*Meeks*).)

However, as Boonsalat tacitly acknowledges in his opening brief, being written up one time for tardiness does not reach the level of an adverse employment action. "Minor

15

or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable . . . ." (*Yanowitz, supra,* 36 Cal.4th at p. 1054; *Meeks, supra,* 24 Cal.App.5th at p. 879; *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1449-1450 ["mere oral or written criticism of an employee . . . does not meet the definition of an adverse employment action under FEHA"]; *McRae, supra,* 142 Cal.App.4th at p. 383, 392 [" 'Letter of Instruction' " prompted by reports, inter alia, that plaintiff had been coming in late did not rise to the level of adverse employment action].)

To make out a prima facie case, "the causal link element may be established by an inference derived from circumstantial evidence." (*McRae, supra,* 142 Cal.App.4th at p. 388.) Thus, "[p]roximity in time between the employee's protected activity and the adverse employment action satisfies the employee's prima facie burden" on a causal connection. (*Castro-Ramirez v. Dependable Highway Express, Inc.* (2016) 2 Cal.App.5th 1028, 1048-1049; *Glynn, supra,* 42 Cal.App.5th at p. 56; *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1020; *McCrae, supra,* 142 Cal.App.4th at p. 388; *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69 (*Morgan*) [" ' "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.' " ' "].) Temporal proximity to support an inference of causation is not limited to weeks or a month. (*Flores v. City of Westminster* (9th Cir. 2017) 873 F.3d 739, 750 [" '[d]epending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation' "].)

Conversely, however, "[a] long period between an employer's adverse employment action and the employee's earlier protected activity may lead to the

16

inference that the two events are not causally connected. [Citation.] But if between these events the employer engages in a pattern of conduct consistent with a retaliatory intent, there may be a causal connection. [Citation.]" (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 421 (*Wysinger*); see also *Green v. Laibco, LLC* (2011) 192 Cal.App.4th 441, 456; *Hawkins v. City of Los Angeles* (2019) 40 Cal.App.5th 384, 394 (*Hawkins*).)

Boonsalat contends that he alleged a "pattern of retaliatory conduct" after he filed an "internal" discrimination complaint in September 2015, an "external" complaint in September 2016, and the lawsuit in December 2017. That pattern included: (1) "[a]dding negative notes and commentary to [his] employment file to cast doubt on [his] ability to qualify for transfers and/or promotions"; (2) after he started "attending coursework toward a Master's Degree," Gardner "advised [him] that he would not be allowed to continue his coursework"; (3) he was "singled out and suddenly 'written up' for failing to arrive to work at a new start time while other workers were routinely allowed to arrive after the new start time without being written up"; (4) the City "specifically outlined a stated 'goal'" for [him] to attend night classes to finish his master's degree, yet [the City] then curiously refused to allow [him] to work a flex schedule (or to use vacation time) to achieve that stated employment 'goal' "; (5) "[i]n November 2017, [he] applied to participate in [the City's] 'Leadership Academy' only to find out he wasn't selected while a probationary employee was selected instead."

In *Wysinger*, the court held the jury could find the employer's action was motivated by animus despite the passage of time following the employee's filing a complaint with the Equal Employment Opportunity Commission, because there was evidence that afterwards the employee had not been invited to serve on management committees or apply for management positions and repeatedly had been "treated with 'coldness.' " (*Wysinger, supra,* 157 Cal.App.4th at p. 421.) In *Hawkins*, evidence of a pattern of retaliatory conduct included counseling the employee about job performance

17

and subjecting the employee to the "unusual" treatment of requiring a doctor's note for a one-day illness. (*Hawkins, supra,* 40 Cal.App.5th at p. 394; see also *Casey v. Sumitomo (SHI) Cryogenics of America, Inc.* (S.D. Cal., Aug. 14, 2019, No. 19cv937-CAB-BGS) 2019 WL 3817952, *4 [denying motion to dismiss retaliation claim where plaintiff alleged that, after protected activity, she "had her job duties stripped," "received unwarranted scolding," and "was given falsified negative job reviews"].)

We conclude that Boonsalat's allegations that the City added negative comments to his personnel file, encouraged him to get a master's degree and then told him he would not be allowed to continue taking courses and would not accommodate the time he needed to take them, wrote up only Boonsalat for being late under a new policy, and selected a probationary employee over Boonsalat for leadership training sufficiently alleged a pattern of retaliatory conduct.

The City, however, argues that "there is no allegation as to which City personnel knew about the protected activity and no allegation that persons possessed of that knowledge included the person or persons who made the decision to terminate [Boonsalat's] employment . . . ." (See *Morgan, supra,* 88 Cal.App.4th at p. 70 [" 'Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.' [Citation.]"].)

Boonsalat's contention on appeal that the City "knew [he] had filed an internal and external discrimination complaints between September 2015 and September 2016, and filed the subject action in December 2017" is supported by a citation to allegations in the third amended complaint that: (1) on September 25, 2015, Boonsalat requested a meeting with the City's human resources department to file a discrimination complaint; (2) a meeting was scheduled for September 30; (3) he was asked to provide "topics of discussion" in the advance of the meeting; (4) on September 28, he provided the discussion topics, which included his belief that he was not selected for promotion because he was not Mormon and not White; and (5) on September 30, he was notified

18

that he could " 're-interview' " for the promotion.  Boonsalat also alleges that he was told that the " 're-interview' " was necessary because of a policy requiring it since 90 days had passed since his prior interview, but he subsequently learned "there is no such policy requiring a 're-interview' . . . ."

The close timing of Boonsalat's contacts with human resources and his being notified that he could " 're-interview' " for the position supports an inference that decision makers involved in denying him a promotion knew of his complaint to human resources and acted in response.[7]

We conclude that Boonsalat has alleged a prima facie claim of retaliation in violation of FEHA.

## DISPOSITION

The judgment dismissing the third amended complaint is reversed and the matter remanded to the trial court with directions to vacate its order sustaining the demurrer without leave to amend and to enter a new and different order overruling the demurrer. Boonsalat shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/s/
HOCH, J.

We concur:


/s/
BLEASE, Acting P. J.


/s/
RENNER, J.

---

[7]  On reply, Boonsalat also argues that the City knew of his complaint filed with DFEH in September 2016 because the City rejected his request for mediation of that complaint.

19